**CLARK, State Highway Comm'r, v. WARNER, County Clerk.**

No. 12900—Opinion Filed Jan. 24, 1922.

Rehearing Denied March 7, 1922.

(Syllabus.)

1. **Mandamus—Exercise of Supreme Court's Jurisdiction—Matters Publici Juris.**

The power of the Supreme Court to grant mandamus and to hear and determine the same as authorized by section 2, art. 7, of the Oklahoma Constitution, will be exercised only when the questions involved are publici juris, or when some unusual situation exists, whereby not to entertain jurisdiction would work a great wrong or result in a practical denial of justice. State ex rel. v. Ross, 76 Okla. 11, 183 Pac. 918.

**2. Same — Highways — Construction — Interest of Public.**

Good roads with bridges spanning the streams intersecting such roads are potent factors in civilization, commerce, and general prosperity. The building of a general system of good roads is something in which the public is interested.

**3. Same—Refusal of County Clerk to Attest Warrants for Bridge Building— Averting Danger of Losing Federal Aid.**

When the United States Government appropriates a large sum of money to be used in the construction of a bridge spanning one of the principal rivers of the state, and such appropriation is made on condition that the state or the counties interested shall appropriate a like sum of money for the erection of such bridge, and a certain county, by its board of county commissioners, appropriates a specified part of the sum necessary to meet such government appropriation and the county clerk of said county refuses to attest the warrant for said sum so appropriated by the board of county commissioners, and by reason of such refusal on the part of said county clerk the sum so appropriated by the United States Government is in danger of being withdrawn by it, and thereby the public would lose the benefits of such sum in the building of said bridge, held, that an unusual situation exists whereby not to entertain jurisdiction would work a great wrong and result in a practical denial of justice. Under such facts, the Supreme Court will entertain an original action and exercise its original jurisdiction by mandamus so as to prevent a denial of justice.

**4. Same—Effect of Emergency Loan of Amount to County by Citizens.**

Where such county clerk refuses to perform his duty by attesting such warrant, if some of the citizens of the county, by subscription, should raise a fund equal in amount to that appropriated by the board of county commissioners of such county to prevent said government appropriation from being withdrawn, and such sum, so raised by the citizens, is for temporary purposes to meet the emergency caused by the dereliction of duty on the part of the county clerk, this act on the part of such citizens does not defeat the jurisdiction of this court, for the unusual situation still exists. The building of the bridge is a matter in which the public is interested. The burdens, duties, and responsibilities rest upon the public, and not upon the individual citizenship.

**5. Mandamus—Claim Against County— Attestation of Warrant by County Clerk —Ministerial Act.**

When a claim against the county has been presented to and allowed by the board of county commissioners, the attesting by the county clerk of a warrant drawn in payment thereof is a purely ministerial act as to which there is no discretion, and it is the legal duty of the clerk to attest the warrant without regard to the opinion of the clerk as to the lawfulness of the claim. Bodine v. McDaniel Auto Co., 69 Oklahoma, 170 Pac. 899.

**6. Same—Claimant's Right to Writ Against Clerk.**

If the county clerk refuses to attest a warrant ordered by the board of county commissioners and signed by the chairman thereof, in payment of a claim allowed by such board, the claimant may compel the clerk to attest such warrant by mandamus. Bodine v. McDaniel Auto Co., supra.

**7. Counties—Decisions of Board of Commissioners—Right of Appeal.**

Under section 1, ch. 117, Session Laws 1915, from all decisions of the board of county commissioners, upon matters properly before them, there shall be allowed an appeal to the district court by any persons aggrieved, including the county by its county attorney, upon filing a bond, or upon the written demand of at least 15 freeholders of the county, the county attorney shall take an appeal, when he deems it to the interest of the county so to do, and in such case no bond shall be required.

**8. Same—"Persons Aggrieved" by Decision.**

The persons aggrieved by the decisions or order of the board of commissioners are the person or persons directly interested in the matters involved upon which such decision or order is made.

**9. Same—Right of Appeal by Taxpayer.**

A taxpayer, as such, is not directly interested in the decision or order of the board of county commissioners because such decision or order may affect the amount of the taxes he would thereafter be required to pay. Such taxpayer is not thereby aggrieved within the meaning of said statute, and he does not have the right of appeal from such decision or order.

**10. Mandamus — Procedure — Peremptory Writ Without Evidence.**

In mandamus proceedings, where the averments in the alternative writ are sufficient to authorize the relief sought and the return of the respondent does not state a defense, it is not error for the trial court to grant the peremptory writ without hearing testimony. Bodine v. McDaniel Auto Co., supra.

Original action in mandamus brought by B. E. Clark, State Highway Commissioner, against J. D. Warner, as County Clerk of McClain County, to compel the said County Clerk to attest a certain warrant. Alternative writ of mandamus issued. The return of the County Clerk to the alternative writ failing to state a defense, the peremptory writ is awarded.

W. C. Madison, C. G. Moore, E. E. Glasco, and Roy Glasco, for plaintiff.

W. H. Woods, for defendant.

MILLER, J. This is an original proceeding in mandamus brought on December 12, 1921, by B. E. Clark, State Highway Commissioner of the state of Oklahoma, as plaintiff, against J. D. Warner, county clerk of McClain county, Okla., as defendant, to compel the said J. D. Warner, as such county clerk of McClain county, to perform certain official duties which will be more fully set forth herein.

The duly verified petition of the plaintiff shows the following state of facts: That the State Highway Commissioner, acting in conjunction with the county commissioners of McClain and certain other counties of Oklahoma, are attempting to erect a bridge across the South Canadian river between McClain county and Oklahoma county. For the purpose of erecting this bridge the United States Government has appropriated and set aside the sum of $100,000, on condition that the state of Oklahoma or the counties interested appropriate and set aside a like sum for the construction of said bridge. This appropriation on the part of the United States Government is known as Federal Project Number One. To meet this appropriation and insure the erection of the bridge, the counties of Oklahoma, Grady, and Kiowa have appropriated and set aside $85,000 for said purpose. On the 25th day of October, 1921, the plaintiff herein, B. E. Clark, in his official capacity as Commissioner of the State Highway Department, filed with the board of county commissioners of McClain county, Okla., and the defendent, as county clerk of said county, a claim for the sum of $15,000, which was the estimated proportion of the funds that should be paid by McClain county to offset or meet the federal aid of Project Number One. On the 8th day of November, 1921, the board of county commissioners of McClain county, being convened in regular session, duly and regularly allowed $11,700 of said claim and disallowed the sum of $3,300 of the same. Said claim was allowed and ordered to be paid out of the state highway construction fund of said county, and there was at that time and is now sufficient money in the county treasury of McClain county to the credit of said fund to pay said claim. The defendant Warner, as county clerk, has possession of the warrant book and refuses to either draw the warrant in accord with the order or deliver the warrant book, upon demand, to J. E. Colbert, chairman of the board of county commissioners, so that the same may be drawn up by him, and said county clerk refuses to attest said warrant. The petition then states the following facts and asks for the following relief:

"4. That said project for the construction of said bridge has long since been approved by the Federal Government and the aforesaid counties have been so slow in raising sufficient funds to match that contributed by the Federal Government, that the Federal Government has been threatening and is now threatening to withdraw from the state treasury said $100,000 contributed by it, and the state of Oklahoma and the counties aforesaid are in danger of losing said funds.

"5. That the construction of said bridge is a matter in which the public in general in the state of Oklahoma and especially in the counties of Oklahoma, McClain, Grady, and Kiowa are greatly interested, and the public welfare demands that this matter be speedily heard and determined, that the plaintiff could not obtain adequate relief in the district court for the reason that the judgment of the district court awarding a peremptory writ of mandamus would not be final but the defendant would be allowed an appeal to this court, which would cause such a delay that the Federal Government would withdraw the funds appropriated by it before the same could be determined by this court.

"Therefore, plaintiff prays this honorable court to issue a peremptory writ of mandamus requiring and compelling said defendant to comply with his statutory duty in the premises, and to either draw a warrant in favor of plaintiff on the county treasurer of McClain county against the highway construction fund of said county, and submit the same to J. E. Colbert, chairman of the board of county commissioners, for his signature, or that he deliver to J. E. Colbert, chairman of said board, the warrant book containing the blank warrants used in drawing warrants against the state highway construction fund, so that the said J. E. Colbert may prepare said warrant in proper form and sign the same, and when such warrant is prepared and signed by J. E. Colbert, chairman of the board of county commissioners, that the defendant attest the same as county clerk, and deliver it to plaintiff, as required by law; and for such other and further relief as may be just and proper in the premises. B. E. Clark, Plaintiff."

An alternative writ of mandamus was issued by this court on the 14th day of December, 1921, which was duly served on the defendant, who made his return to the alternative writ, which is set out in his answer. He complains because two members of the board of county commissioners 25, 1921, and then makes the following attempted to allow the claim on October mission:

"V. That on November 8, 1921, the board of county commissioners attempted to re allow said claim of B. E. Clark in the sum. of $11,700; that from said action Arthur Small, a taxpayer, lodged his appeal to the district court within 20 days and said appeal is still pending; that within 20 days from said November 8th, eight other taxpayers of McClain county lodged a similar appeal to the district court, after a written demand had been served on the county attorney to appeal, signed by 23 freeholders of McClain county, Oklahoma; and said county attorney had declined and refused to appeal; that said appeal is still pending in the district court, all of which will show by exhibits attached hereto."

In the seventh paragraph of his answer defendant states:

"VII. Defendant further states that he was served with a restraining order, on October 27th, commanding him to refrain from issuing any warrant and that said restraining order was not dissolved until November 10, 1921."

By the other parts of his answer he contends that this court does not have original jurisdiction in this mandamus proceeding.

We are at a loss to understand in what way the restraining order issued October 27, 1921, which he says was dissolved on November 10, 1921, prevented this defendant from performing his official duty or constitutes any defense to this action, which was not instituted until December 12, 1921. Neither is it material whether the attempt on the part of two members of the board of county commissioners to allow the claim on October 25, 1921, was legal or illegal. The petition shows the action of the board of county commissioners was legal when they did, on November 8, 1921, actually allow the claim in the sum of $11,700.

There are only two questions presented in the argument and brief:

First: That this court is without original jurisdiction in a mandamus proceeding of this kind.

In State ex rel. Freeling, Atty. Gen., v. Ross, 76 Okla. 11, 183 Pac. 918, this court said in paragraphs 1 and 2 of the syllabus:

"1. The power of the Supreme Court to grant mandamus and to hear and determine the same, as authorized by section 2. art. 7, Constitution, will be exercised only when the questions involved are publici juris, or when some unusual situation exists. whereby not to entertain jurisdiction would work a great wrong or result in a practical denial of justice

"2. Where an action in mandamus has been brought by the state, on the relation of the attorney general, against a county superintendent of public instruction, in the district court having jurisdiction, to compel the performance of a ministerial duty arising under section 2, art. 7, c. 219. Sess. Laws 1913, and such court erroneously holds that the parties have a remedy at law by appeal, and refuses to entertain jurisdiction, and the effect thereof, if an appeal therefrom were prosecuted to this court, would, in the ordinary course of the law, be to work great delay in the opening of the public schools of the affected districts, the Supreme Court will entertain and exercise its original jurisdiction by mandamus, so as to prevent a denial of justice."

The plaintiff in his brief says:

" * * * All men are agreed that the public schools are foremost in importance to the community, state, or nation. In this case we urge this court to take jurisdiction because the delay that would follow from proceeding in the district court would result in the withdrawal of the sum of $100,000 federal aid, and the consequent loss to McClain, Grady, Kiowa, and Oklahoma counties and the state of Oklahoma of a great bridge across the South Canadian river. Good roads and good bridges are second only in importance to good schools. For thirty years the treacherous South Canadian river has successfully defied the counties along its path to build bridges that would withstand its sand and waves. Now four great counties of this state have joined together, obtained federal aid, and appropriated money sufficient to construct a magnificent bridge across this stream. This bridge will be on a great federal highway. In times of peace, the citizens of the Republic, from the Great Lakes to the Gulf, may pass to and fro over this bridge without charge, whether on business or on pleasure, and in times of war, this will be a military highway, over which the soldiers of the Republic and the munitions of war may pass on the way to the country's defense."

It is common knowledge that good roads with bridges across the streams intersected by such roads are potent factors in civilization, commerce, and general prosperity. We read in the early history of this country that the American Indian in his then existing state was a savage. He lived in wigwams, built no roads or bridges, but followed a trail through the forests. It is to be hoped that our Anglo-Saxon civilization will not return to the conditions prevailing among the aborigines at the time the forefathers landed at Plymouth Rock.

The petition states facts which show the questions involved are publici juris. The petition also shows that an unusual situation exists, whereby not to entertain juris-

diction would work a great wrong and result in a practical denial of justice. The public is interested in the erection of a bridge across the South Canadian river. The people living in the counties that are in close proximity to the place where the bridge is proposed to be erected, and which counties are called upon to help pay the cost of the erection of the bridge, are vitally interested in procuring the proposed federal aid. If this court should not take jurisdiction and the plaintiff were compelled to resort to an intermediate court, such as the district court, and there, if he obtained a writ of mandamus, the defendant could appeal to this court, and in the ordinary course of appeals, before the case could be finally determined, the proposed federal aid would be withdrawn. This would amount to a denial of justice. Under these facts, this court, being the court of last resort, should exercise the original jurisdiction conferred upon it by the Constitution.

. Not being willing to rely on the original answer filed, which raises the question of the right of this court to take jurisdiction of mandamus proceedings in this class of cases, on December 14, 1921, the defendant filed his duly verified amended answer, which, omitting the caption and verification, reads:

"For defendant's first amended answer, he, the said J. D. Warner, first adopts his original answer as a portion of this amended answer, and in addition thereto states that he has been informed and believes it to be true that the $15,000 referred to in this proceeding or the $11,700, so referred to, as McClain county's quota for the building of a bridge involved, has been secured by private subscription and that the withdrawal of the $100,000 set aside by the Federal Government in nowise depends upon the result of the court's action in this case. nor upon the issuance of the warrant for $11,700 by J. D. Warner, county clerk of McClain county.

"J. D. Warner."

If the defendant had a personal or pecuniary interest in this action, it might not be proper to criticize him for grasping at straws or resorting to technicalities in order to win. This defendant assumes the position of acting with the utmost honesty of purpose in protecting McClain county and its citizens from the payment of this claim, which had already been allowed by the board of county commissioners. He asks this court to refuse to take jurisdiction on what he states on his information and belief. If his information is not in accord with the facts, and this court refused to assume jurisdiction, it might result in the federal

aid to the extent of $100,000 being lost to the counties interested and the public. But, admitting the facts to be that some of the good citizens of McClain county, realizing the need of the bridge and the benefits to be derived therefrom, have pledged, by subscription, the amount needed to prevent the withdrawal of the proposed federal aid, these facts do not defeat the jurisdiction of this court. Such citizens should be commended for their patriotic act in coming to the aid of their county to prevent an injustice being done the public, and not punished by a denial of justice. If this has been done, it was made necessary because the defendant arbitrarily refused to perform his plain official duties under his oath of office. His duty is clearly outlined in Bodine, County Clerk, v. McDaniel Auto Co., 69 Oklahoma, 170 Pac. 899. Paragraphs 2 and 3 of the syllabus read:

"2. When a claim against the county has been presented to and allowed by the board of county commissioners, the attesting by the county clerk of a warrant drawn in payment thereof is a purely ministerial act, as to which there is no discretion, and it is the legal duty of the clerk to attest the warrant without regard to the opinion of the clerk as to the lawfulness of the claim.

"3. If the county clerk refuses to attest a warrant ordered by the board of county commissioners and signed by the chairman thereof, in payment of a claim allowed by such board, the claimant may compel the clerk to attest such warrant by mandamus."

The defendant, to support his theory that this court does not have jurisdiction, cites Homesteaders v. McCombs, 24 Okla. 201, 103 Pac. 691, and Montgomery v. State Election Board, 27 Okla. 324, 111 Pac. 447. It is unnecessary for us to review these authorities, or even comment on them. They have been ably distinguished from this class of cases by Sharp, J., in State ex rel. Freeling v. Ross, supra.

The defendant's second proposition is:

"That an appeal has been taken from the act of the board of county commissioners by Arthur Small and eight other taxpayers of McClain county, and, that the county clerk could not issue the warrant while this appeal was pending."

The right of the taxpayer of a county to appeal from the action of the board of county commissioners in allowing a claim depends upon section 1640, Revised Laws of Oklahoma, 1910, as amended by section 1, ch. 117, of the Session Laws 1915, page 169, which reads as follows:

"From all decisions of the board of commissioners, upon matters properly before

them, there shall be allowed an appeal to the district court by any persons aggrieved, including the county by its county attorney, upon filing a bond with sufficient penalty, and one or more sureties to be approved by the county clerk, conditioned that the appellant will prosecute his or her appeal without delay, and pay all cost that he or she may be adjudged to pay in the said district court; said bond shall be executed to the county, and may be sued in the name of the county upon breach of any condition therein: Provided, that the county attorney, upon the written demand of at least fifteen (15) freeholders of the county, shall take an appeal from any action of the board of county commissioners when said action relates to the interests or affairs of the county at large or any portion thereof, in the name of the county, when he deems it to the interest of the county so to do; and in such case no bond shall be required or given, and upon serving the notice provided for in the next section the county clerk shall proceed the same as if a bond had been filed."

This section makes two separate and distinct provisions for persons to take appeals from the action of the board of county commissioners. One provides for an appeal by giving a bond; the other provides for an appeal without bond. The first part of the section says:

"* * * There shall be allowed an appeal to the district court by any persons aggrieved, including the county by its county attorney, upon filing a bond with sufficient penalty. * * *"

Under this part of the section only persons who are aggrieved may appeal. It will be necessary to define the limitations of the word "aggrieve" in order to determine the right of a citizen or taxpayer of the county to appeal from the action of the board of county commissioners in allowing a claim.

Webster's International Dictionary defines "aggrieved" as follows:

"Adversely affected in respect of legal rights; suffering from an infringement or denial of legal rights."

Bouvier's Law Dictionary defines "aggrieved":

"Having a grievance, or suffered loss or injury. The parties aggrieved are those against whom an appealable order or judgment has been entered. One cannot be said to be aggrieved unless error has been committed against him."

Persons cannot be said to be aggrieved when they are only remotely or indirectly affected by the decision or action of the board of county commissioners. In a civil action the persons who may be aggrieved by the decision of the court are the parties to the action, the real parties in interest. The one aggrieved is the one against whom a judgment or decision is rendered or order made. It would not be contended that the prospective heir of the litigant who has been aggrieved by the adverse ruling of the court could take an appeal because he was indirectly affected by the judgment, in that his inheritance would be thereby diminished; neither would it be contended that the creditor of the litigant so adversely ruled against by the court could appeal because it diminished his chance of collecting the amount due him from such litigant. If A. B. presented a claim to the board of county commissioners for $10,000, and such board allowed the claim in the sum of $5,000, A. B. would be aggrieved and could appeal. He is directly affected by the action of the board of county commissioners, but neither his creditors nor prospective heirs could appeal, although the effect might eventually be that the creditors would lose $5.000 of their claims against A. B., or the prospective heirs might eventually inherit an estate worth $5,000 less than it would have been worth had the full amount of A. B.'s claim been allowed.

If the Legislature had intended to say that every person who was remotely or indirectly interested in the action of the board of county commissioners could appeal, or that every citizen or taxpayer of the county should have the right to appeal from the action of the board of county commissioners, the English language contains sufficient words to clearly express this intention. But the Legislature has wisely provided that only those aggrieved may appeal, and that includes only those directly interested in the action or decision of the board of county commissioners. If each taxpayer or each citizen had the right to appeal from such order allowing a claim. it would be almost impossible to transact the business of the county. A person in furnishing supplies or entering into a contract to perform service for the county would be taking the hazard of some person who might through spite or any other motive take an appeal from. the action of the board of county commissioners in allowing his claim, and his money would thus be held up indefinitely. It might cause him irreparable loss and injury, yet the only condition of the bond required under the above quoted statute is:

"* * * That the appellant will prosecute his or her appeal without delay, and pay all cost that he or she may be adjudged to pay in the said district court. * * *"

In Kinealy v. Macklin et al., 67 Mo. 95, the court said:

"A purchaser of land at execution sale brought suit in the St. Louis circuit court to have a deed to the land made by the execution debtor set aside as fraudulent. Upon a hearing an interlocutory decree was entered, finding the issues for the plaintiff, and providing that the deed should be set aside, unless the defendant should, within a time fixed, pay into the court the amount of the execution debt and costs. This having been done, plaintiff's suit was dismissed. Thereupon both parties appealed to the general term of the circuit court, where the decree was reversed for the error of the court in permitting defendants to retain the land upon paying the debt, and the cause was remanded. That court had power, if it saw fit, to enter such a decree as the circuit court should have entered. Upon appeal taken by the plaintiff from the judgment of the general term, held, that he was not aggrieved by that judgment, and had no right to appeal."

In Ely v. Frisbie, 17 Cal. 250, in the last paragraph of the opinion the court said:

"The objection that as the order directs the injunction only upon condition that an undertaking be executed and filed, and as it does not appear that there was any such undertaking, the defendants are not 'parties aggrieved,' and as such entitled to appeal, is untenable. The parties aggrieved, within the meaning of the three hundred and thirty-fifth section of the Practice Act, who are entitled to appeal, are the parties against whom an appealable order or judgment has been entered."

In Wiggin v. Swett, 6 Metc. (Mass.) 194, 39 Am. Dec. 716, the first paragraph of the syllabus reads:

"Party aggrieved, having right of appeal from decree, is one whose pecuniary interest is directly affected by the decree; one whose right or property may be established or divested thereby."

In Swackhamer v. Kline's Administrator, 25 N. J. Eq. 503, the second paragraph of the syllabus reads:

"He only, who is aggrieved by such order, has the right to appeal; and a party aggrieved is one whose pecuniary interest is directly affected by the decree, or whose right of property may be established or divested thereby."

It will be observed that the two cases last above cited specifically refer to the party aggrieved as being the one "directly affected."

Webster's International Dictionary, in defining the word "directly," says:

"In a direct way; without anything intervening; not by secondary, but by direct means."

In 11 Cyc. 600, the rule is laid down in the text as follows:

"The right of appeal from the decision auditing, settling, and directing the payment of demands against the county only extends to such persons as may have an interest in the claim and who feel aggrieved by the allowance or rejection of their demand. It has no reference to the citizens of a county who are not interested in the allowance of the claim. * * *"

In Hudson et al. v. Jefferson County Court, 28 Ark. 359, the court said:

"In allowing or disallowing a demand against the county, an appeal lies only by the party interested, and not by citizens who are not interested."

In Morath v. Gorham et al. (Wash.) 40 Pac. 129, the court said:

"Under Laws 1893, p. 292, providing that any person may appeal from a decision of the county commissioners, and that the 'party appealing' shall serve notice, etc., persons interested in a claim, who feel aggrieved by the decision of the commissioners only can appeal, and not taxpayers generally."

In Lawry v. Board of Com'rs of Snohomish Co. et al. (Wash.) 41 Pac. 190, the Supreme Court of Washington said:

"As stated in the brief of appellant, the only question for discussion and determination in this case is, Will an appeal lie from a decision or order of the board of county commissioners with respect to the removal of the county seat? The appellant is a resident and taxpayer of Snohomish county, and, as such, undertook to prosecute an appeal from an order of the board of county commissioners of that county declaring the result of an election to remove the county seat, and from an order requiring the removal of the county offices to the place designated by the board. The superior court dismissed the appeal, on motion of the defendants, on the ground that the resolution and order complained of were not appealable. In so doing the appellant contends the court erred. He insists that he had an unquestionable right to appeal, under the act of March 11, 1893 (Laws 1893, p. 291), which provides that 'any person may appeal from any decision or order of the county commissioners to the superior court of the proper county.' This language is very broad and general; and, if it must be literally construed, his contention must necessarily prevail. But we do not think it should be so construed. If any person may appeal from any decision or order, every person may appeal, and we think there must be a limit somewhere. In reference to this provision, it was said by this court, in Morath v. Gorham, 11 Wash. 577, 40 Pac. 129, that: 'A literal construction of this part of our statute would compel us to hold that any man or woman in the county or state, or elsewhere, may appeal, * * * regardless of his or her relation to the matter in controversy; and we do not think the Legislature intended, for a

moment, to confer such an unlimited and universal right of appeal. It is a generally understood proposition of law, and presumably within the knowledge of the Legislature when they enacted this section, that no one but a party to an action or proceeding can prosecute an appeal from a judgment or decision therein. Haynes, New Trials & App. c. 31. And we must presume that, when the Legislature said "any person may appeal" they meant any person who has properly present a matter before the board for their determination, and who is dissatisfied with their decision.' This whole statute must be read together, in order to ascertain the legislative intention; and, when so read, it will be manifest that it was only intended to give the right of appeal to parties to ordinary proceedings before the board, or to persons directly interested therein. The words, 'party appealing,' are used several times in that portion of the act prescribing the manner of taking the appeal, which strongly tends to show that it was the intention that the person who appeals must be, in some way, a party to the matter in controversy."

It is clear that individual taxpayers do not have the right under the first provision of section 1640, supra, to appeal from the action of the board of county commissioners in allowing claims against the county. Such individual citizens or taxpayers, as such, are not aggrieved by the order. The second part of said section is the proviso. We quote the part of said proviso necessary to determine how individual citizens or taxpayers may appeal:

"Provided, that the county attorney, upon the written demand of at least fifteen (15) freeholders of the county, shall take an appeal from any action of the board of county commissioners when said action relates to the interests or affairs of the county at large or any portion thereof, in the name of the county, when he deems it to the interest of the county so to do. * * *"

Under this proviso in said section of the statute the county attorney is especially delegated as the guardian of the interests of the county. If he should not be fully alert to the county's interest on some particular question, 15 freeholders may, by petition, call his attention to the particular action of the board of county commissioners, which action such freeholders think has jeopardized the interests or affairs of the county. This section then provides, when the county attorney's attention has been called to the action as therein set forth, "that the county attorney, * * * shall take an appeal, * * * in the name of the county, when he deems it to the interest of the county so to do. * * *" We are unable to find anything in this proviso that authorizes eight, nine, or any other number of freeholders, citizens, or taxpayers to take an appeal. The only authority granted to such freeholders is to petition the county attorney to appeal in the name of the county, and this the county attorney has not seen fit to do. If the county attorney arbitrarily and without cause refuses to perform this duty, such petitioners may have a remedy to compel performance, but that question is not before us, and therefore we are not expressing any opinion upon it.

In Bodine v. McDaniel Auto Co., supra, it is said:

"* * * Section 1640, Revised Laws 1910, as amended by chapter 117, Session Laws 1915, authorizes appeal from all acts of the board of county commissioners by all persons aggrieved, including the county by its county attorney. In the event that the county attorney refuses to appeal in matters in which the county is interested, it becomes his duty to do so, when he deems it to the county's interest, upon the written request of fifteen freeholders of the county. The county clerk would have the same right as any other citizen, if a freeholder, to join in such request to the county attorney. As a citizen, he would have the authority to procure the signature of a sufficient number of freeholders and enforce an appeal. In addition to the protection thus afforded the public, it is also provided in section 3, chapter 186, Session Laws 1913: * * *"

The defendant cites Bowles v. Neeley, 28 Okla. 556, 115 Pac. 344; Harlow v. Board of County Commissioners of Payne County, 33 Okla. 353, 125 Pac. 449; Black v. Geissler, 58 Okla. 335, 159 Pac. 1124, and Bodine v. McDaniel Auto Co., supra. He claims these cases support his theory that the citizens or freeholders have the individual right to appeal. We do not agree with counsel for defendant. We have already quoted from the case of Bodine v. McDaniel Auto Co., and it does not sustain his contention. Neither does the case of Bowles v. Neeley, supra. This case is dealing strictly with sections 702, 704, 7413, and 7414 of Snyder's Compiled Statutes of Oklahoma. The court did not have under consideration section 1640, supra.

In Harlow v. Board of County Commissioners, supra, the court did not hold that the individual taxpayers had the right of appeal, but in the latter part of the opinion, it said:

"The decision in the last-mentioned case was made by this court without considering, and without having our attention called to Cummings v. Bd. of County Commissioners of Noble County, 13 Okla. 21, 73 Pac. 288, with which it seems to be in some respects in conflict; but, if we assume in the present case

that plaintiff has the right of appeal, still he may maintain this action."

In Black v. Geissler, supra, this court, in the last part of the opinion, said:

"Should claims for said alleged illegal expenses be presented to and allowed by the board of county commissioners, the plaintiff would have an adequate remedy in the premises by an appeal from the action of the board to the district court, upon giving bond as required by section 1, c. 117, Session Laws 1915, p. 205, amending section 1640, Rev. Laws 1910."

In the foregoing statement, Hardy, J., who wrote the opinion, was not attempting to define and outline the course of procedure necessary to take in perfecting an appeal from the action of the board of county commissioners. The defendant Geissler could appeal by circulating a petition and getting 15 or more freeholders to sign the same and present it to the county attorney. That is the method outlined by section 1640, supra. It is also the method outlined in that part of the opinion we have above quoted from Bodine v. McDaniel Auto Co., supra. The opinion does not even purport to say that Geissler individually has the right of appeal, but it says:

"The plaintiff would have an adequate remedy in the premises by an appeal."

As has already been pointed out, there are two separate provisions for taking an appeal under section 1640, supra. It may be contended that, because reference is made to the giving of bond as required by said section, this is decisive of the individual right of appeal. This does not necessarily follow. The writer of the opinion was only saying that if an appeal were taken in any way which would require the giving of a bond, then the bond should be given. The first part of section 1640, supra, says:

"* * * There shall be allowed an appeal to the district court by any persons aggrieved, including the county by its county attorney, upon filing a bond with sufficient penalty."

Geissler might go to the county attorney and request him to appeal and the county attorney decide to appeal in behalf of the county without the petition of 15 freeholders as specified in the proviso, and then it would be necessary to give the bond provided for in said section. If the county attorney, on request of Geissler, appealed, it would not be inconsistent with the first part of section 1640, supra, for Geissler to give a bond to pay the costs of the appeal. The attempted individual appeals of the eight on nine taxpayers are not authorized by section 1640,

supra, and such appeals are therefore a nullity.

The petition of the plaintiff stated a cause of action and set out sufficient facts to give this court jurisdiction to issue the alternative writ of mandamus. The averments in the alternative writ are sufficient to authorize the relief sought. The return of the respondent to the alternative writ does not state a defense, therefore the peremptory writ should be granted.

In Bodine v. McDaniel Auto Co., supra, paragraph 1 of the syllabus reads:

"In mandamus proceedings, where the averments in the alternative writ are sufficient to authorize the relief sought, and the return of the respondent does not state a defense, it is not error for the trial court to grant the peremptory writ without hearing testimony."

It is therefore considered, ordered, adjudged, and decreed by this court that the peremptory writ of mandamus be, and the same is hereby, awarded as prayed for. The defendant is hereby commanded to forthwith deliver the warrant book to J. E. Colbert, chairman of the board of county commissioners of McClain county, for him to draw a warrant in favor of the plaintiff on the treasurer of McClain county against the highway construction fund of said county for the sum of $11,700, and when said warrant has been signed by said J. E. Colbert, as chairman of the board of county commissioners, and presented to this defendant, that he, the said J. D. Warner, immediately attest said warrant as county clerk and deliver it to the plaintiff as required by law. The clerk of this court is hereby authorized and directed to issue the peremptory writ of mandamus in accordance with this judgment and deliver the same to the sheriff of McClain county to be served upon the defendant according to law.

PITCHFORD, V. C. J., and JOHNSON, McNEILL, ELTING, and KENNAMER, JJ., concur.