W. H. PENNY AND WIFE, PAULINE B. PENNY; ROY S. WHITFIELD AND WIFE, BERNICE WHITFIELD; THOMAS H. McCAULEY; E. WELDON HERNDON AND WIFE, ROBENA J. HERNDON; IRVING W. PAGE AND WIFE, EULA P. PAGE; AND J. P. CARLTON AND WIFE, IVEY M. CARLTON v. CITY OF DURHAM, A MUNICIPAL CORPORATION; EDISON H. JOHNSON, BUILDING AND PLUMBING INSPECTOR OF THE CITY OF DURHAM; AND NORTHLAND INVESTMENT COMPANY, INC., A CORPORATION.

(Filed 25 February, 1959.)

1. **Pleadings § 15—**

A demurrer admits, for the purpose of testing the pleading, the truth of factual averments properly alleged and such relevant inferences of fact as may be deduced therefrom, but it does not admit any legal inferences or conclusions of law asserted by the pleader.

2. **Municipal Corporations § 37—**

It is not required that zoning district lines coincide with property lines, regardless of the area involved. G.S. 160-173.

3. **Same—**

As a general rule, the words of a zoning ordinance will be given their ordinary meaning and significance.

**4. Same—**

Zoning ordinances are in derogation of the right of private property, and exemptions must be liberally construed in favor of the property owner.

**5. Same—**

The zoning ordinance in question, passed by a majority vote, rezoned applicant's property lying more than 150 feet from the street, but left the zoning regulations unchanged as to applicant's property abutting the street to a depth of 150 feet therefrom. The owners of more than 20 per cent of the footage on the opposite side of the street from applicant's property had protested the change. *Held:* Protestants' property does not lie "directly opposite" the property rezoned within the purview of G.S. 160-176, and therefore it was not required that the zoning ordinance be passed by three-fourths of the members of the city council. The term "directly opposite" defined.

APPEAL by plaintiffs from *McKinnon, J.,* July Civil Term, 1958, of DURHAM, docketed and argued as No. 669 at the Fall Term, 1958.

This action was instituted to have declared illegal and void an ordinance of the City of Durham rezoning a parcel of land belonging to defendant, Northland Investment Company, Inc., and reclassifying same as business property, and to restrain the use thereof for business purposes. The defendants severally demurred to plaintiffs' complaint on the ground that it did not state causes of action against them.

The complaint alleges, in substance, the following facts pertinent to this appeal (the paragraphing is ours and does not conform to the paragraph numbering of the complaint):

(1) Plaintiffs are owners and occupants of residences located in the City of Durham on property immediately abutting the south side of Club Boulevard (a public street), extending 100 feet from the street frontage on the south side of Club Boulevard. The defendant, Northland Investment Company, Inc., (hereinafter referred to as Northland) owns approximately 31 acres of land lying on the north side of and abutting Club Boulevard, and fronting 912.7 feet on Club Boulevard. The property of plaintiffs lies across the Boulevard from and directly opposite Northland's property fronting on the Boulevard. Plaintiffs are the owners of more than twenty per cent of the area of the lots directly opposite said land of Northland and extending at least 100 feet from the southern line of Club Boulevard.

(2) On 2 December, 1957, and for many years prior thereto, the land of defendant, Northland, and the area including the property of plaintiffs, together with the neighborhood adjacent thereto, had,

by valid ordinance of the City of Durham, been zoned for one-family residence usage only.

(3) On or about 20 August, 1957, defendant, Northland, applied to the Planning and Zoning Commission of the City of Durham for a change for its property from a residential zone to a local community commercial zone for a shopping center to be known as Northgage Shopping Center. From time to time the application of Northland was changed with respect to the area to be rezoned. In its final form the application excluded from the area to be rezoned the land abutting on Club Boulevard and fronting on same 912.7 feet and extending northwardly from the Boulevard to a line parallel with the Boulevard and 150 feet northwardly therefrom, thus forming a "buffer strip" 150 feet wide intervening between the Boulevard and the area to be rezoned.

(4) The plaintiffs, together with some 200 others, signed and presented to the Planning and Zoning Commission a protest against the rezoning applied for by Northland, and appeared in person and through counsel and presented said written protest and oral protest at all public meetings of the Commission with respect to Northland's application.

(5) The Commission officially approved the application of Northland in its final form and recommended to the Durham City Council that an ordinance be adopted to rezone the Northland property for a shopping center in accordance with said application.

(6) The Durham City Council consists of thirteen members. By a vote of seven "ayes" and five "noes" the Council adopted such ordinance at its regular meeting 2 December, 1957, and the Mayor ruled that said ordinance had been lawfully adopted.

(7) The enforcement of such ordinance would injuriously affect the value and desirability of plaintiffs' property and irreparably damage plaintiffs. The ordinance was not legally adopted in accordance with G.S. 160-176. The creation of a "buffer strip" was merely to circumvent the law. The City of Durham should be restrained from enforcing the ordinance; Northland from constructing or permitting to be constructed a shopping center on its property; and defendant, Building and Plumbing Inspector, from issuing permits for construction of buildings for a shopping center.

On 30 July, 1958, the matter came on to be heard before Judge McKinnon upon the demurrers of defendants. From judgment sustaining said demurrers plaintiffs excepted and appealed.

*Reade, Fuller, Newsom & Graham for plaintiffs, appellants.*

*C. V. Jones, for appellees, City of Durham and Edison H. Johnson, Building Inspector.*

*E. C. Brooks, Jr., E. K. Powe and Eugene C. Brooks, III, for appellee, Northland Investment Company, Inc.*

MOORE, J. A demurrer admits, for the purpose of testing the pleadings, the truth of factual averments properly alleged and such relevant inferences of fact as may be deduced therefrom, but it does not admit any legal inferences or conclusions of law asserted by the pleader. *Bailey v. McGill*, 247 N.C. 286, 100 S. E. 2d 860.

In the court below the plaintiffs based their case upon the alleged illegality of the rezoning ordinance of 2 December, 1957. As set out in the judgment appealed from, plaintiffs assigned as the sole ground for their contention that said ordinance is illegal "that their property is directly opposite the property which was rezoned by said ordinance, within the meaning of G.S. 160-176, which requires the affirmative vote of three-fourths of the members of the City Council to change a zone when the owners of twenty per cent or more of the lots directly opposite the area, the zone of which is sought to be changed, filed written protest against such change; and that since said ordinance did not receive a three-fourths vote . . . it was not validly adopted. . . ."

The pertinent part of G.S. 160-176 is as follows: "Such regulations, restrictions and boundaries (fixed by a zoning ordinance) may from time to time be amended, supplemented, changed, modified or repealed. In case, however, of a protest against such change, signed by the owners of twenty per cent or more . . . of the area of the lots . . . directly opposite thereto extending one hundred feet from the street frontage of such opposite lots, such amendment shall not become effective except by favorable vote of three-fourths of all the members of the legislative body of such municipality." The portion in parentheses was inserted by us for sake of clarity.

It will be observed that the rezoning ordinance in question did not receive a favorable vote of three-fourths of all the members of the Durham City Council, but was adopted by a majority vote of seven to five. If the property of plaintiffs is "directly opposite" the rezoned property of defendant, Northland, the rezoning ordinance is invalid. If not "directly opposite," such ordinance is valid. It is to be kept in mind that Club Boulevard and the buffer strip 150 feet wide intervenes between the property of plaintiffs and Northland's rezoned property.

The fact that Northland owns both the "buffer strip" and the re-

zoned area and that both are parts of one tract of land makes no difference in this case. We must consider the matter in the same manner as if these areas were under separate ownership. The "Zoning Regulations" provide that the City "may divide the municipality into districts of such number, shape and area as may be deemed best suited to carry out the purposes of this article." G.S. 160-173. To hold that zoning district lines must coincide with property lines, regardless of area involved, would be to render the act largely ineffective.

To reach a solution, it is necessary to determine the meaning of the expression "directly opposite" as used under the circumstances in this case. Webster's New International Dictionary, Second Edition, Unabridged, defines "opposite" as "on opposite sides; in an opposed position. Across an intervening space from and usually facing or on the same level with; as . . . to live opposite the post office." It defines "directly" to mean, "in a straight line; at right angles to a surface; Vertically, as opposed to obliquely; without anything intervening; straightway; next in order."

If the statute had used the word "opposite" alone, clearly it could be said that plaintiffs' property and the rezoned property are opposite in the sense of being "across an intervening space" from each other, or in the sense of being "on opposite sides" of the intervening space. This definitive analysis, however, if carried to its logical conclusion, might lead to an absurdity. In this sense two tracts of land several miles apart might be said to lie opposite across any given number of intervening areas.

Even if the foregoing application is made of the word "opposite," this word is qualified by the word "directly," and some meaning must be given to the word "directly" when used conjunctively with the word "opposite." To express it another way, the legislature would not have used the word "directly" as a mere redundancy; it was intended to modify, limit or enlarge the word "opposite." It seems to us that the only definitions of "directly" that would, under the circumstances in this case, really modify "opposite" are: "without anything intervening; next in order."

So it is our opinion that the expression "directly opposite" when applied to the lands in this case means those tracts of land on opposite sides of the street with only the street intervening. This seems to be the most natural and logical and best understood application of the expression. With reference to zoning "the law is disposed to interpret language in the light of surrounding circumstances and to give to words their ordinary meaning and significance." *In re: Builders Supply Co.*, 202 N.C. 496, 163 S.E. 462.

In the case of *Tow-boat Company v. Grant,* 2 Mon. 287, 15 A. 706 (Penn.) a charge of the lower court was approved as to what was "opposite" the town of Sunbury. The trial court said: "Suppose you were to move this town straight across the river, what would you strike? That is just what is opposite." The charge further stated: "Of course, taken literally, everything in this world is opposite something else, and if you take this broad signification the whole western hemisphere is opposite to the town of Sunbury, if you keep widening it out; but the act does not mean that."

The word "directly" is defined, "in a direct way; without anything intervening; not by secondary, but by direct, means" in the following cases, though the factual situations are quite different: *Clark v. Warner,* 85 Okla. 153, 204 P. 929, 934; *Olsen v. Oil Co.,* 188 Cal. 20, 204 P. 393, 396; *Life & Accident Ins. Co., v. Campbell,* 18 Tenn. App 452, 79 S.W. 2d 292, 296. See also Black's Law Dictionary.

The case of *Land Co. v. Realty Co.,* 167 Md. 185 172 A. 911, is directly on all fours with the instant case. The statutory provisions involved are the same as in G.S. 160-176. In that case the rezoned land had between it and the street on the south a parcel of land 222 feet and more in width. In deciding that the plaintiff owners across the street had no standing to require a three-fourths vote of the City Council, the court said: ". . . the plaintiff is not the owner of any lots or area of land within 100 feet of any boundary line of the area included in the change proposed by the new ordinance that became effective upon its passage. All of the land of the plaintiff is *south* of Thirty-Fifth street, and the area of the lots included in the proposed change is everywhere at least 222 feet *north* of Thirty-Fifth street, so the width of that street and a parcel of land 220 feet wide are between the plaintiff's land and the area changed."

It must be kept in mind that "Zoning ordinances are in derogation of the right of private property, and where exemptions appear in favor of the property owner, they must be liberally construed in favor of such owner." *In re: Builders Supply Co., supra.*

The rezoning ordinance of 2 December, 1957, in question in this case was regularly adopted and is legal and valid. Upon the record before us, the "buffer strip" is still zoned for one-family residence usage. Whatever the ultimate intention of Northland, the law is adequate to meet any exigency that may arise.

In view of the decision in this case, it is unnecessary to discuss or decide the right to injunctive relief in situations similar to the one at bar, should ordinances be declared invalid.

Affirmed.