MORRIS COMMUNICATIONS CORPORATION d/b/a FAIRWAY OUTDOOR ADVERTIS-ING, Petitioner v. CITY OF BESSEMER CITY ZONING BOARD OF ADJUST-MENT, Respondent

No. 150A10

(Filed 16 June 2011)

1. **Appeal and Error— standard of review—administrative decision—de novo**

A *de novo* standard of review applied to plaintiff's argument on appeal that defendant Board of Adjustment's (BOA) interpretation of the term "work" as used in a sign permit issued to plaintiff constituted an error of law. The BOA's interpretation was not entitled to deference.

2. **Zoning— sign permit—interpretation of ordinance—unduly restrictive**

The Board of Adjustment (BOA) erred in prohibiting plaintiff from relocating a sign as necessary to accommodate a state highway project based on the BOA's determination that a sign permit issued to plaintiff had expired. The BOA's interpretation of the term "work" as used in the sign permit to mean only visible activities related to construction was too narrow and unduly restrictive. Zoning ordinances are strictly construed in favor of the free use of real property and plaintiff's actions were sufficient to constitute "work."

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, —— N.C. App. ——, 689 S.E.2d 880 (2010), affirming a judgment and order entered on 31 October 2008 by Judge Thomas W. Seay, Jr. in Superior Court, Gaston County. On 26 August 2010, the Supreme Court allowed petitioner's petition for discretionary review as to an additional issue. Heard in the Supreme Court 15 November 2010.

*Van Winkle, Buck, Wall, Starnes & Davis, P.A., by Craig D. Justus, for petitioner-appellant.*

*Gray, Layton, Kersh, Solomon, Furr & Smith, P.A., by David W. Smith, III and Michael L. Carpenter, for respondent-appellee.*

MARTIN, Justice.

In this appeal we consider whether a local board of adjustment erred in prohibiting a company from relocating a sign as necessary to accommodate a state highway project.

MORRIS COMMC'NS CORP. v. CITY OF BESSEMER CITY ZONING BD. OF ADJUST.

[365 N.C. 152 (2011)]

In 2000 Morris Communications Corporation d/b/a Fairway Outdoor Advertising (Fairway) lawfully constructed a sign on land situated along the Gastonia Highway in Bessemer City, North Carolina. The sign stood in close proximity to the highway and a NAPA auto parts store located on the same parcel. In July 2005 the North Carolina Department of Transportation (DOT) notified Fairway that it was condemning a portion of the parcel to widen the highway. As a result, the sign had to be relocated and the NAPA building had to be renovated. To accommodate the DOT project, Fairway applied for a Bessemer City sign permit. On 31 August 2005, the Bessemer City zoning administrator met with a Fairway representative and issued a sign permit to Fairway. During their meeting the administrator and the Fairway representative discussed the sign relocation project. According to the Bessemer City sign ordinance, Fairway's permit would expire on 27 February 2006 unless Fairway began "the work described in . . . [the] sign permit . . . within six months from the date of issuance." City of Bessemer City, N.C., Ordinance § 155.207. Fairway's sign permit stated that "[t]he applicant is responsible for obtaining a building permit (if required) prior to commencing work on the proposed improvement."

In November 2005 Fairway applied for a building permit at the Gaston County building inspection department, which administers building permits for Bessemer City. The county issued Fairway a building permit on 13 December 2005. The county building permit contained language similar to the Bessemer City sign ordinance, stating that "[t]his permit becomes null and void if work or construction authorized is not commenced within 6 months, or if construction or work is suspended, or abandoned for a period of 1 year at any time after work is started."

Soon after the sign permit was issued, Fairway began negotiating with DOT and the property owner, Ralph Dixon (Dixon). This process included communicating with DOT about the location of the highway's expanded right-of-way and discussions with Dixon about his plans for the NAPA building. As part of these negotiations, DOT indicated in a letter dated 2 December 2005 that it would pay Fairway $14,850.00 for the sign relocation. Fairway received another letter from DOT dated 21 February 2006 stating that Fairway had to remove the sign from the road widening project right-of-way "on or before" 15 March 2006. Fairway also began renegotiating the lease governing the sign with Dixon. On 27 February 2006, the day the sign permit was scheduled to expire if "work" had not commenced, Fairway issued an

MORRIS COMMC'NS CORP. v. CITY OF BESSEMER CITY ZONING BD. OF ADJUST.

[365 N.C. 152 (2011)]

internal work order to remove the sign. On 9 March 2006, Fairway sent DOT a letter about its "tentative relocation plans for th[e] sign" and expressing its desire to remove the sign on or before 13 June 2006, several days before the widening project contract would be awarded. DOT orally agreed to push the removal date back to 19 June 2006. On 8 June 2006, Fairway applied for and received a renewed building permit from Gaston County. The renewed permit was scheduled to expire on 8 December 2006. On 12 June 2006, Bessemer City amended its zoning ordinance to ban most outdoor advertising.

On 13 June 2006, Fairway took down the sign in compliance with DOT's instructions. The sign, its poles, and other component parts were placed in storage off the property. The sign and related equipment remained in storage for more than five months while Fairway waited for DOT to finalize the exact location of the right-of-way and for Dixon to reconstruct the NAPA building. The right-of-way location was not finalized until the middle of November 2006. Fairway then made arrangements to install concrete footings and place the sign in its new location. On 4 and 5 December 2006, county officials inspected the footings. The next day Fairway reinstalled the sign. With the exception of the new footings, the sign was exactly the same as the one that had been previously removed.

On 16 January 2007, Bessemer City sent Fairway a Notice of Violation informing the company that the relocated sign violated the city's outdoor advertising ban and that it must be removed within thirty days. The notice asserted that Fairway's sign permit had expired because work on the relocation project had not "commenced prior" to the permit's expiration date, 27 February 2006. According to the notice, the renewed county building permit was invalid because it was issued after the city's sign permit had expired. On 14 February 2007, Fairway appealed the Notice of Violation to the Bessemer City Board of Adjustment (the BOA) pursuant to N.C.G.S. § 160A-388(b).

On 7 May 2007, the BOA conducted a public hearing and voted five to one to affirm the determination that the sign violated the city's outdoor advertising ban. The BOA Chair dissented. Following the hearing the BOA issued a written order demanding removal of the sign. Fairway filed a petition for writ of certiorari under N.C.G.S. § 160A-388(e2) requesting that the Superior Court, Gaston County, review the BOA's decision. With the consent of the parties, the trial court issued the writ on 10 August 2007. After hearing arguments on 29 October 2008, the trial court entered an order two days later affirming the BOA decision.

MORRIS COMMC'NS CORP. v. CITY OF BESSEMER CITY ZONING BD. OF ADJUST.

[365 N.C. 152 (2011)]

Fairway appealed to the Court of Appeals. On 2 March 2010, the Court of Appeals affirmed the trial court's order in a divided opinion holding that: (1) The BOA's interpretation of its ordinance was entitled to some deference under a de novo standard of review; (2) The trial court correctly concluded that the sign's re-erection violated the city's sign ordinance because Fairway had not commenced "work" within six months of the issuance of the sign permit; (3) Fairway did not have vested rights to re-erect the sign under N.C.G.S. § 160A-385(b)(i) because the sign permit expired before the building permit was renewed; (4) The BOA was not estopped from ordering the sign's removal; and (5) The trial court properly concluded that the BOA's decision was "supported by competent, material, and substantial evidence and was otherwise not arbitrary or capricious." *Morris Commc'ns Corp. v. City of Bessemer Zoning Bd. of Adjust.*, —— N.C. App. ——, 689 S.E.2d 880 (2010).

Judge Robert C. Hunter issued a dissenting opinion and argued that the BOA's interpretation of the term "work" was too narrow. *Id.* at ——, 689 S.E.2d at 886 (Hunter, J., dissenting). Specifically, Judge Hunter contended that the term " 'work' does not necessarily mean that a physical alteration must occur at the site." *Id.* at ——, 689 S.E.2d at 887.

[1] We review the trial court's order for errors of law. *See Mann Media, Inc. v. Randolph Cnty. Planning Bd.*, 356 N.C. 1, 14, 565 S.E.2d 9, 18 (2002) (citations omitted); *Capricorn Equity Corp. v. Town of Chapel Hill Bd. of Adjust.*, 334 N.C. 132, 137, 431 S.E.2d 183, 186-87 (1993). Our review asks two questions: Did the trial court identify the appropriate standard of review, and, if so, did it properly apply that standard? *Mann Media*, 356 N.C. at 14, 565 S.E.2d at 18; *ACT-UP Triangle v. Comm'n for Health Servs.*, 345 N.C. 699, 706, 483 S.E.2d 388, 392 (1997) (citation omitted). As with any administrative decision, determining the appropriate standard of review to be applied when reviewing a board of adjustment decision depends on "the substantive nature of each assignment of error." *N.C. Dep't of Env't & Natural Res. v. Carroll*, 358 N.C. 649, 658, 599 S.E.2d 888, 894 (2004) (citations omitted); *see also Mann Media*, 356 N.C. at 13, 565 S.E.2d at 17; *ACT-UP*, 345 N.C. at 706, 483 S.E.2d at 392. Reviewing courts apply de novo review to alleged errors of law, including challenges to a board of adjustment's interpretation of a term in a municipal ordinance. *See Capricorn Equity Corp.*, 334 N.C. at 137, 431 S.E.2d at 187; *see also Mann Media*, 356 N.C. at 13, 565 S.E.2d at 17 (citations omitted); *In re Tadlock*, 261 N.C. 120, 124-25, 134 S.E.2d

MORRIS COMMC'NS CORP. v. CITY OF BESSEMER CITY ZONING BD. OF ADJUST.

[365 N.C. 152 (2011)]

177, 180-81 (1964) (interpreting a city zoning ordinance as a question of law). De novo review applies here because Fairway alleges the BOA's interpretation of the term "work" constituted an error of law. *See Mann Media*, 356 N.C. at 13, 565 S.E.2d at 17.

Fairway contends the Court of Appeals erred in determining the BOA's interpretation was entitled to deference under de novo review. We agree. Under de novo review a reviewing court considers the case anew and may freely substitute its own interpretation of an ordinance for a board of adjustment's conclusions of law. *Id.* (citation omitted). In *Capricorn Equity Corporation*, we noted that "the superior court, sitting as an appellate court, *could* freely substitute its judgment for that of [the Chapel Hill Board of Adjustment] and apply *de novo* review as *could* the Court of Appeals with respect to the judgment of the superior court." 334 N.C. at 137, 431 S.E.2d at 187 (emphases added) (citing *N.C. Sav. & Loan League v. Credit Union Comm'n.*, 302 N.C. 458, 464-65, 276 S.E.2d 404, 409-10 (1981)). In other words, reviewing courts may "make independent assessments of the under-lying merits" of board of adjustment ordinance interpretations. 4 Patricia E. Salkin, *American Law of Zoning* § 42:41, at 42-180 & n.1 (5th ed. 2010) (citing, among other authority, *Capricorn Equity Corp.*, 334 N.C. at 137, 431 S.E.2d at 187). This proposition empha-sizes the obvious corollary that courts consider, but are not bound by, the interpretations of administrative agencies and boards. *See, e.g.*, *Wells v. Consol. Jud'l Ret. Sys. of N.C.*, 354 N.C. 313, 319-20, 553 S.E.2d 877, 881 (2001) (upholding long-standing agency interpreta-tion); *N.C. Sav. & Loan League*, 302 N.C. at 465-66, 276 S.E.2d at 410 (finding agency interpretation "unpersuasive").

**[2]** Turning to the disputed ordinance, we find the BOA's interpreta-tion of the term "work" unpersuasive. The ordinance provides that:

> If the work described in any compliance or sign permit has not begun within six months from the date of issuance thereof, the permit shall expire. Upon beginning a project, work must be dili-gently continued until completion with some progress being apparent every three months. If such continuance or work is not shown, the permit will expire.

City of Bessemer City, N.C., Ordinance § 155.207.

Bessemer City's zoning administrator testified at the BOA hearing that he interpreted the term "work" to mean "actually something moving on the ground . . . . [c]onstruction." In his view, Fairway failed to commence "work" within the time period prescribed in the sign

MORRIS COMMC'NS CORP. v. CITY OF BESSEMER CITY ZONING BD. OF ADJUST.

[365 N.C. 152 (2011)]

permit because he did not observe construction-like activities occurring on the property. He therefore concluded the sign was relocated without a valid sign permit.

In contrast, Fairway argues the term "work" encompasses the broader range of activities necessary to complete the sign relocation. Fairway contends its negotiations with DOT and Dixon, as well as its acquisition of a county building permit, constitute "work" under the ordinance. We agree with Fairway that the term "work" has a broader meaning than mere visible evidence of construction.

This Court has long held that governmental restrictions on the use of land are construed strictly in favor of the free use of real property. *See, e.g., Westminster Homes, Inc. v. Town of Cary Zoning Bd. of Adjust.*, 354 N.C. 298, 304, 308, 554 S.E.2d 634, 638, 640-41 (2001); *Yancey v. Heafner*, 268 N.C. 263, 266, 150 S.E.2d 440, 443 (1966) ("Zoning regulations are in derogation of common law rights and they cannot be construed to include or exclude by implication that which is not clearly their express terms." (citation and internal quotation marks omitted)); *In re W.P. Rose Builders Supply Co.*, 202 N.C. 496, 500, 163 S.E. 462, 464 (1932) ("Zoning ordinances are in derogation of the right of private property, and where exemptions appear in favor of the property owner, they should be liberally construed in favor of such owner."), *quoted in Penny v. City of Durham*, 249 N.C. 596, 601, 107 S.E.2d 72, 76 (1959); *Price v. Edwards*, 178 N.C. 493, 500, 101 S.E. 33, 37 (1919) (providing examples of statutes that derogate from common law, including those "which impose restrictions upon the control, management, use, or alienation of private property" (citation and internal quotation marks omitted)).

When interpreting a municipal ordinance we apply the same principles of construction used to interpret statutes. *See Westminster Homes*, 354 N.C. at 303, 554 S.E.2d at 638 (citations omitted); *Coastal Ready-Mix Concrete Co. v. Bd. of Comm'rs of Nags Head*, 299 N.C. 620, 629, 265 S.E.2d 379, 385 (1980) (citation omitted). Undefined and ambiguous terms in an ordinance are given their ordinary meaning and significance. *See Perkins v. Ark. Trucking Servs., Inc.*, 351 N.C. 634, 638, 528 S.E.2d 902, 904 (2000) (citations omitted); *Penny*, 249 N.C. at 600, 107 S.E.2d at 76; *In re Builders Supply*, 202 N.C. at 499, 163 S.E. at 463-64; *see also Reg'l Acceptance Corp. v. Powers*, 327 N.C. 274, 278, 394 S.E.2d 147, 149 (1990) ("Where words of a statute are not defined, the courts presume that the legislature intended to give them their ordinary meaning determined according to the context in which those words are ordinarily used." (citation omitted)).

MORRIS COMMC'NS CORP. v. CITY OF BESSEMER CITY ZONING BD. OF ADJUST.

[365 N.C. 152 (2011)]

The term "work" is not defined in the Bessemer City ordinance. Perhaps even more telling, the first sentence of the ordinance indicates that "work" is "described in . . . [the] sign permit." City of Bessemer City, N.C., Ordinance § 155.207. But Fairway's sign permit fails to describe "work" in any detail whatsoever. Instead, the permit simply contains administrative information, including the parcel number and address, the name of the permit holder, the permit fee, and the permit's issuance and expiration dates. Most notably, the "details" line on the permit form merely states the sign is for "business identification." Consequently, neither the ordinance nor the sign permit provides even minimally adequate contours to the definition of "work."

Despite this lack of definitional clarity, the BOA nonetheless contends the term "work" means only visible activities related to construction. Specifically, the BOA asserts that the words "apparent" and "shown" in the second and third sentences of the ordinance determine the meaning of "work." We reject the BOA's narrow and unduly restrictive interpretation. "Apparent" and "shown" do not illustrate the types of activities that constitute "work," but simply describe the requirements for sustaining a sign permit after "work" initially commences.

To ascertain the ordinary meaning of undefined and ambiguous terms, courts may appropriately consult dictionaries. *Perkins*, 351 N.C. at 638, 528 S.E.2d at 904 (citations omitted); *see also Penny*, 249 N.C. at 600, 107 S.E.2d at 75-76 (applying dictionary definition to ambiguous term in zoning ordinance). *Webster's Dictionary* defines "work" to include "sustained physical *or mental* effort to overcome obstacles and achieve an objective or result." *Merriam-Webster's Collegiate Dictionary* 1363 (10th ed. 1999) (emphasis added). Applying this definition to the Bessemer City ordinance, the term "work" has a broader meaning than mere visible evidence of construction. *Cf. Town of Hillsborough v. Smith*, 276 N.C. 48, 55, 170 S.E.2d 904, 909 (1969) (holding that landowners who incurred contractual obligations to construct a building and to purchase dry cleaning equipment acquired vested rights to carry on a nonconforming use, even though the contracts did "not result in any visible change in the condition of the land").

Remand is not automatic when "an appellate court's obligation to review for errors of law can be accomplished by addressing the dispositive issue(s)." *Carroll*, 358 N.C. at 664, 599 S.E.2d at 898 (citations and internal quotation marks omitted). Under such circum-

MORRIS COMMC'NS CORP. v. CITY OF BESSEMER CITY ZONING BD. OF ADJUST.

[365 N.C. 152 (2011)]

stances the appellate court can "determin[e] how the trial court *should have* decided the case upon application of the appropriate standards of review." *Id.* at 665, 599 S.E.2d at 898. Here we "can reasonably determine from the record" whether Fairway's challenge to the BOA's interpretation "warrant[s] reversal or modification" of the BOA's ultimate decision. *Id.*

One of the fundamental purposes of zoning boards of adjustment is to provide flexibility and "prevent . . . practical difficulties and unnecessary hardships" resulting from strict interpretations of zoning ordinances. *See* 2 James A. Webster, Jr., Patrick K. Hetrick & James B. McLaughlin, Jr., *Webster's Real Estate Law in North Carolina* § 18-19, at 874 (5th ed. 1999) [hereinafter *Webster's*]; *see also* N.C.G.S. § 160A-388(d) (2009). Thus, "[f]or the purpose of effecting a just result," boards of adjustment are empowered "to correct errors or abuse" arising from "the zoning enforcement officer['s]" administration of an ordinance. *Webster's* § 18-19, at 874. By affirming the Bessemer City zoning administrator's narrow and restrictive interpretation of the term "work," the BOA failed to effectuate "a just result."

The record raises an inference that the Bessemer City zoning administrator took advantage of the ambiguity in the sign ordinance and the uncertainty and complexity of the road widening project to hasten the city's prospective ban on outdoor advertising. The administrator admitted during the BOA hearing that his interpretation of the term "work" was entirely subjective. As he put it, "[T]his is my interpretation." He also revealed that both the Bessemer City planning department and he had a "general disagreement with billboards." On several occasions during the hearing, the administrator referred to the sign in question as "new," even though he could not support this characterization with specific evidence.

The zoning administrator was generally aware of the sign relocation project and the behind-the-scenes steps necessary to complete it. During his testimony before the BOA, the administrator acknowledged that the sign had to be relocated *because of* the DOT's road widening project. The administrator discussed the relocation with a Fairway representative when she picked up the sign permit. Beginning in September 2005, the administrator participated in several meetings between DOT and Dixon about the road widening project.

The zoning administrator also knew that the sign relocation and NAPA building renovation were linked. When questioned by

MORRIS COMMC'NS CORP. v. CITY OF BESSEMER CITY ZONING BD. OF ADJUST.

[365 N.C. 152 (2011)]

Fairway's attorney, the administrator stated that the sign could not be relocated until reconstruction of the NAPA building was complete:

Q. [I]t's fair to say that the sign could not be relocated until the building was taken down?

A. Well, yes.

Q. All right.

A. That's evident.

Q. And until really the road-widening project took place and the building was taken down, that sign couldn't have been moved; is that fair to say?

A. Pretty fair to say.

And yet when he was asked about this connection later during the hearing, the administrator baldly denied its existence:

Q. Were you aware of the sign being relocated, that act being connected to the remodeling?

A. It was two different cases. They were never—we know that they were all the same property owner. . . . But no, they're two separate issues; I wouldn't tie them together.

Q. So you didn't tie the actual removal of a portion of the building to the sign being moved back?

A. It had nothing to do with this permit.

According to Fairway, three steps were required to complete the sign relocation: (1) finalizing the exact location of the sign with DOT; (2) renegotiating the lease with Dixon; and (3) securing a county building permit. The zoning administrator admitted that accomplishing each of these tasks was sufficient to constitute "work" under the ordinance:

Q. All right. Now, do you have any, I guess, understanding that in order to do the work, that as part of that, that Fairway has to work out an arrangement with the Department of Transportation as it relates to the roadway?

A. Okay.

Q. Does that seem fair?

A. Yes.

MORRIS COMMC'NS CORP. v. CITY OF BESSEMER CITY ZONING BD. OF ADJUST.

[365 N.C. 152 (2011)]

Q. And that as part of the work, in order to relocate the sign, that Fairway has to renegotiate a lease with the property owner because the building's coming down, the sign is being moved?

A. (Nodded head up and down.)

Q. Does that seem fair, that that's part of the work?

A. I'm sure that there's a lot of things to do, yes.

Q. Now, isn't it fair also that, in order to relocate the sign, they actually had to go and get a building permit; that would be part of the work?

A. Yes.

As noted above, during the six month period following the issuance of the sign permit, Fairway communicated with DOT about removing the sign, started renegotiating the lease with Dixon, and secured a Gaston County building permit.

In support of its position, the BOA argues that Fairway did not keep the zoning administrator informed of its efforts to relocate the sign. Fairway representatives admitted at the hearing that they did not give the zoning administrator periodic updates. Even though this lack of communication was less than ideal, it is understandable given the ambiguity of the ordinance and the special context of an involuntary sign relocation project. Fairway representatives testified that they believed Fairway was in compliance with the sign ordinance, and that they were never informed that the sign permit was about to expire, nor did they think it would expire under their understanding of the ordinance. They also stated that they would have promptly renewed Fairway's sign permit or taken other action to comply with the ordinance had they known the permit was in jeopardy under the city's interpretation of the ordinance. A Fairway representative with over twenty years of experience in the outdoor advertising industry testified that permit renewals are ordinarily unnecessary because most sign construction projects are completed quickly.

We acknowledge that requiring municipalities to investigate the validity of the numerous permits they have issued would be unduly burdensome. But our decision does not impose such a requirement because our holding is limited to the unusual facts of this case, involving the overly restrictive application of a vague ordinance to a sign relocation that was mandated by a DOT project. Fairway was not

moving the sign to increase its visibility; the relocation was necessary to accommodate a DOT project.

In sum, the rule of construction that zoning ordinances are strictly construed in favor of the free use of real property is appropriately applied here. To relocate its sign Fairway was required to work with three levels of government—one of which had a stated policy opposing outdoor advertising. Nevertheless, Fairway took multiple steps to lawfully relocate its sign within the six month period prescribed in the sign permit. Because respondent's interpretation of its sign ordinance constituted an error of law, we reverse.

REVERSED.

Justice JACKSON did not participate in the consideration or decision of this case.