IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-529

No. COA21-398

Filed 2 August 2022

Forsyth County, No. 20 CVS 805

VISIBLE PROPERTIES, LLC, Petitioner,

v.

THE VILLAGE OF CLEMMONS, Respondent.

Appeal by petitioner from order entered 23 December 2020 by Judge Eric Morgan in Forsyth County Superior Court. Heard in the Court of Appeals 23 February 2022.

> *Van Winkle, Buck, Wall, Starnes and Davis, P.A., by Craig D. Justus, Jonathan H. Dunlap, and Brian D. Gulden, for petitioner-appellant.*
>
> *Blanco Tackabery & Matamoros, P.A., by Elliot A. Fus and Chad A. Archer, for respondent-appellee.*

DIETZ, Judge.

¶ 1   Visible Properties, LLC wants to erect a digital billboard on property bordering a highway in Clemmons. The zoning board of adjustment denied Visible's request on the ground that the zoning ordinances did not permit digital billboards. The trial court, on certiorari review, affirmed.

¶ 2   Our task on appeal is to determine if the zoning board and the trial court properly interpreted the language of the ordinances.

¶ 3    This is not as easy as it sounds. Determining which zoning provisions apply requires so much cross-referencing it is almost dizzying. There is a general provision that permits off-premises signs such as billboards on the property at issue; a separate overlay district regulation that, by omission, does not permit off-premises signs on the property; and a sign-specific ordinance that permits off-premises signs on the property and states that it supersedes other regulations concerning signs. Then, there is a separate provision stating that, in the event of a conflict among different provisions, the most restrictive provision prevails.

¶ 4    Similarly, the zoning ordinances prohibit "moving and flashing signs" and "electronic message boards." But, in light of the examples of "moving and flashing signs" in the ordinance, and the descriptions of billboards in other portions of the ordinance as either "signs" or "billboards" (not "message boards"), there are reasonable interpretations of these provisions that both cover the type of digital billboard proposed by Visible, and that do not.

¶ 5    In the end, we are guided by two overarching principles governing construction of zoning ordinances—first, that we should strive to harmonize provisions and avoid conflicts whenever possible; and second, that we should construe ambiguous provisions in favor of the free use of property. Applying those principles here, we hold that the sign-specific regulation controls the permissible locations of signs and permits Visible's proposed billboard on the property. We further hold that the

prohibitions on "moving and flashing signs" and "electronic message boards" are open to multiple reasonable interpretations, are therefore ambiguous, and must be construed in favor of Visible's proposed use of the property. We therefore reverse the trial court's order and remand for entry of an order reversing the Board of Adjustment's decision.

## Facts and Procedural History

¶ 6     Visible Properties, LLC is a North Carolina company that owns and operates outdoor advertising signs and billboards throughout the state.

¶ 7     In June 2019, Visible applied to the Village of Clemmons for a zoning permit to construct a billboard with digital technology at 2558 Lewisville-Clemmons Road. The permit requested construction of a "10' x 30' Outdoor Advertising Structure with Digital changeable copy" that would be categorized as a "Ground (off premises freestanding)" sign. The proposed digital billboard would not contain any moving or scrolling text or images, nor any flashing lights or images, but would change the static image displayed on the billboard every six to eight seconds using digital technology.

¶ 8     Officials with the Village of Clemmons denied the permit on the grounds that "the structure is a 'Sign, Ground (Off-Premises),' which is not listed as a permitted use in the South Overlay District in which the Property is located" and that the structure is prohibited by the sign regulations regarding "moving and flashing signs" and "electronic message boards."

¶ 9          Visible appealed to the Clemmons Zoning Board of Adjustment. The Board met in December 2019 and conducted an evidentiary hearing where it considered the application materials, testimony, and evidence presented. In January 2020, the Board entered a written decision affirming the staff decision to reject Visible's permit application. Visible petitioned for a writ of certiorari, which the trial court granted. In December 2020, the trial court affirmed the Board of Adjustment's decision. Visible timely appealed.

**Analysis**

¶ 10          Visible challenges the trial court's legal determination that the proposed digital billboard was prohibited by various provisions of the zoning ordinances. In this type of administrative review, challenging the interpretation of zoning ordinances, the trial court sits as an appellate court and reviews this legal question *de novo. Fort v. Cty. of Cumberland*, 235 N.C. App. 541, 548, 761 S.E.2d 744, 749 (2014). On appeal, this Court also applies a *de novo* standard of review and examines whether the trial court committed an "error of law in interpreting and applying the municipal ordinance." *Four Seasons Mgmt. Servs., Inc. v. Town of Wrightsville Beach*, 205 N.C. App. 65, 76, 695 S.E.2d 456, 463 (2010).

¶ 11          Zoning ordinances are interpreted "to ascertain and effectuate the intent of the legislative body." *Capricorn Equity Corp. v. Town of Chapel Hill*, 334 N.C. 132, 138, 431 S.E.2d 183, 187 (1993). "The rules applicable to the construction of statutes are

equally applicable to the construction of municipal ordinances." *Four Seasons Mgmt. Servs.*, 205 N.C. App. at 76, 695 S.E.2d at 463. But, as discussed in more detail below, when there is ambiguity in a zoning regulation, there is a special rule of construction requiring the ambiguous language to be "construed in favor of the free use of real property." *Morris Commc'ns Corp. v. City of Bessemer*, 365 N.C. 152, 157, 712 S.E.2d 868, 871 (2011).

## I.     Permitted uses at the property location

¶ 12         Visible first challenges the trial court's determination that the zoning ordinances prohibited the use of off-premises signs on the property at issue in this case. Specifically, the trial court determined that a provision creating the "Lewisville Clemmons Road (South Overlay District)"—an overlay district in which this property is located—did not permit off-premises signs. Moreover, the trial court determined that, to the extent other provisions in the ordinances permitted off-premises signs on the property, the "Conflicting Provisions" section of the ordinances required the court to apply "the more restrictive limitation or requirements," which in this case is the overlay district provision.

¶ 13         To address this argument, we must examine the series of use restrictions, corresponding tables, and numerous cross-references that address the use of off-premises signs on property within the Village of Clemmons.

¶ 14         We begin with the general provision of the ordinances governing permissible

uses of property. This general provision is found in Section B.2-4 and is titled "Permitted Uses." The first section of this general provision is entitled "Table B.2.6" and explains that the corresponding table "displays the principal uses allowed in each zoning district and references use conditions." Village of Clemmons, N.C., Unified Development Ordinances, § B.2-4.1 (UDO).

¶ 15      Table B.2.6 is included in the ordinances following this section. In a grid format, the table lists particular uses of property and then indicates whether that use is permitted in each zoning district.

¶ 16      Under the heading "Business and Personal Services" in Table B.2.6, there is an entry for "Signs, Off-Premises." UDO, Table B.2.6. This entry indicates that off-premises signs generally are permissible in the zoning district in which this property is located. This entry in the table also references a separate use condition located in Section B.2-5.67. That subsection, titled "Signs, Off-Premises," then cross-references another section, discussed below, stating that "All signs must comply with the provisions of Section B.3-2." UDO, § B.2-5.67.

¶ 17      A later subsection of the ordinances states that these general provisions in Table B.2.6 may be subject to additional restrictions in other subsections, including two that are relevant to our analysis—a section governing overlay districts and the section, referenced above, governing signs:

**2-4.5 OTHER DEVELOPMENT REQUIREMENTS OF THE ZONING ORDINANCE**

(A) Additional Development Requirements. In addition to the regulation of uses pursuant to Section B.2-4 and the use conditions of Section B.2-5, the following additional development requirements of this Ordinance may apply to specific properties and situations.

. . .

(2) Section B.2-1.6 Regulations for Overlay and Special Purpose Districts

. . .

(6) Section B.3-2 Sign Regulations

*Id.* § B.2-4.5.

¶ 18        We begin with the first of these two additional development requirements, concerning overlay and special purpose districts. This provision creates a special district referred to as "Lewisville Clemmons Road (South Overlay District)." *Id.* § B.2-1.6(E). This overlay district includes the property at issue in this case.

¶ 19        In an introductory section titled "Vision," this overlay district provision explains that it is intended "to promote the redevelopment of the area into a mixed use commercial/office/residential." *Id.* § B.2-1.6(E)(A). This provision further explains that it is "intended to foster development that improves traffic/safety, intensifies land use and economic value, to promote a mix of uses, to enhance the livability of the area, to enhance pedestrian connections, parking conditions, and to foster high-quality buildings and public spaces that help create and sustain long-term economic

vitality." *Id.*

¶ 20        Another provision in the Lewisville Clemmons Road (South Overlay District) section states that its "standards apply to sites (including principal and accessory buildings) that are within the Lewisville-Clemmons Road Corridor Overlay district unless otherwise specified herein, and apply to all permitted uses allowed within the district." *Id.* § B.2-1.6(E)(C).

¶ 21        Finally, for purposes of this appeal, the operative provision of the Lewisville Clemmons Road (South Overlay District) section lists the permissible uses of property in the overlay district. *Id.* § B.2-1.6(E)(D). In a section titled "Permitted Uses," the ordinance states that the "overlay district provisions apply to any base zoning district set forth in this chapter that exists within the defined overlay area." *Id.*

¶ 22        The provision then includes a list of use categories corresponding to some (but not all) of the use categories listed in Table B.2.6, discussed above. Within those use categories, this provision again lists some, but not all, of the particular uses listed under those categories in Table B.2.6. Relevant to this case, the "Permitted Uses" provision includes the "Business and Personal Services" category. This is the use category from Table B.2.6 (the general use provision) that addressed the use of off-premises signs. In this more specific overlay provision, the Business and Personal Services category lists *some* uses contained in Table B.2.6 under that category heading, but does not list "Signs, Off-Premises" as a permitted use:

> The overlay district provisions apply to any base zoning district set forth in this chapter that exists within the defined overlay area. The following permitted uses are allowed for this proposed geographic area by use category:
> . . .
> 3. **Business and Personal Services**. Banking and Financial Services, Bed and Breakfast, Building Contractors General, Car Wash, Funeral Home, Health Services Misc., Hotel/Motel, Kennel, Medical Lab, Medical Offices, Motor Vehicle, Leasing/Rental, Repair/Maintenance, Body/Paint Shop, Office Misc., Professional Office, Service Personal, Services, Business A/B, Veterinary Services

*Id.* § B.2-1.6(E)(D)(3).

¶ 23 Finally, we address the last, and most specific, of the relevant provisions—the additional development requirements contained in Section B.3-2 that govern signs. This provision contains lengthy rules specific to various forms of signs and lists their permitted uses and locations:

> **3-2 SIGN REGULATIONS**
>
> **(B) Permitted Signs**
>  . . .
>
> **(2) Application of Table of Permitted Districts for Signs.** *The following signs shall be permitted in the zoning districts as indicated in Table B.3.6*, and shall comply with all regulations of the applicable district *unless otherwise regulated by specific regulations of this section.*
> . . .
>
> **(C) Off-Premises Ground Signs**
>
> **(1) Zoning Districts.** *Ground signs (off-premises) are permitted only in the districts as shown in Table B.3.6 and*

> *only along designated roads which are not identified as view corridors listed in Section B.3-2.1(C)(2).*
>
> **(2) View Corridors.** *No off-premises sign shall be permitted in any view corridor as described below* [Table B.3.7 titled "View Corridors"] *and shown on the View Corridor Map located in the office of the Planning Board.*

*Id.* § B.3-2.1(B)(2), (C) (emphasis added).

¶ 24    Importantly, this sign provision operates differently from other portions of the ordinances governing uses of property. Specifically, as the emphasized language above indicates, this sign provision contains its own, more specific restrictions for where signs may be located and states that these more specific restrictions, where applicable, supersede other portions of the ordinances.

¶ 25    These more specific restrictions take two forms relevant to this case. First, Table B.3.6, which accompanies and is referenced by this "Sign Regulations" ordinance, includes a category for "Off-Premises Signs" and indicates that off-premises signs are permitted only in specific zoning districts. The property at issue in this case is located in a zoning district where off-premises signs are permitted under this table.

¶ 26    Second, Table B.3.7, which also accompanies and is referenced by this "Sign Regulations" ordinance, contains a list of the "view corridors" mentioned in this subsection of the ordinance. These view corridors are specific areas of various streets and highways where off-premises signs are prohibited despite otherwise being

permitted in the more general table, Table B.3.6. Importantly, there are portions of Lewisville-Clemmons Road, on which this property is located, that are in these view corridors. But this particular property is not in a view corridor and thus off-premises signs are permitted on the property under both Table B.3.6 and Table B.3.7.

¶ 27 After walking through this dizzying sequence of provisions, tables, and internal cross-refences, we are left with this: A general provision that permits off-premises signs on this property; a more specific overlay provision that supersedes the general (or "base zoning district") regulations and, by omission, does not permit off-premises signs on this property; and an even more specific sign provision that permits off-premises signs on this property and further states that, where something is "regulated by specific regulations of this section" those specific regulations supersede other regulations of the applicable district.

¶ 28 In defending the Board of Adjustment's ruling, the Village of Clemmons contends that the overlay district provision should control because, at best, these three provisions are conflicting. The Village points to a separate section of the zoning ordinances establishing a rule of construction for conflicting provisions. It provides that where "a conflict exists between any limitations or requirements in this Ordinance, the more restrictive limitation or requirements shall prevail." *Id.* § B.1-7.1. Thus, the Village argues, the conflict between these provisions must be resolved by applying the most restrictive zoning requirements within the conflicting

provisions, which is the overlay district provision that prohibits off-premises signs on the property.

¶ 29 We agree that our State's case law approves of this sort of rule-of-construction language and that, if we determined there is a conflict among different provisions of the ordinance, we must apply this rule of construction in favor of the most restrictive provision. *See Westminster Homes Inc. v. Town of Cary*, 354 N.C. 298, 305–06, 554 S.E.2d 634, 639 (2001).

¶ 30 But we cannot reach that step unless we first determine that there is a conflict. And, in examining that question, we are guided by two common law principles governing interpretation of zoning ordinances. First, when interpreting provisions of a law that are all part of the same regulatory scheme, we should strive to find a reasonable interpretation "so as to harmonize them" rather than interpreting them to create an irreconcilable conflict. *McIntyre v. McIntyre*, 341 N.C. 629, 634, 461 S.E.2d 745, 749 (1995). In other words, even in the presence of this conflicting provisions criteria in the ordinances, we will first seek a reasonable interpretation that has no internal conflicts because we must presume that the drafters would not intend to create regulations that are internally inconsistent and conflicting. *See Taylor v. Robinson*, 131 N.C. App. 337, 338–39, 508 S.E.2d 289, 291 (1998).

¶ 31 Second, when interpreting zoning regulations, which are "in derogation of common law rights," and faced with more than one reasonable interpretation of the

regulations, we should choose the reasonable interpretation that favors "the free use of property." *Cumulus Broad., LLC v. Hoke Cty. Bd. of Comm'rs*, 180 N.C. App. 424, 427, 638 S.E.2d 12, 15 (2006).

¶ 32    With these common law principles in mind, we hold that there is a reasonable interpretation of these provisions that harmonizes them to avoid conflicts. We adopt that interpretation, consistent with the principle that laws should not be construed to be conflicting when there is a reasonable interpretation that contains no internal conflicts. *McIntyre*, 341 N.C. at 634, 461 S.E.2d at 749. Under that interpretation, the specific, express limitation on off-premises signs contained in the Sign Regulations portion of the ordinance supersedes the other two ordinances and controls the use of off-premises signs on this property. UDO § B.3-2.1. This is so both because these sign-specific rules directly apply to the use at issue and because these sign-specific rules state that other zoning restrictions do not apply if the use is "regulated by specific regulations of this section." *Id.*

¶ 33    Under these sign-specific regulations, off-premises signs are permitted at the property on which Visible desires to install its digital billboard. We therefore reject the Village of Clemmons's argument and hold that the trial court erred by affirming the Board of Adjustment's determination that the off-premises sign was precluded by the zoning regulations in the Lewisville Clemmons Road (South Overlay District) provision.

## II. Prohibited signs regulation

¶ 34    We next turn to the alternative ground on which the Board of Adjustment relied, concerning the permissible types of off-premises signs.

¶ 35    Visible applied for approval of a digital billboard described as an "outdoor advertising structure with digital changeable copy." The digital billboard would display a static image like a traditional billboard, without any moving or scrolling images, video, blinking or flashing lights, or other animation. But, unlike a traditional billboard, the static image displayed on the billboard would change every six to eight seconds to a different image. Thus, the digital billboard would be capable of rotating through a series of different images over time.

¶ 36    The Village of Clemmons contends that this type of digital billboard is prohibited by two provisions of the Sign Regulations section of the ordinance, one addressing "Moving and Flashing Signs" and the other addressing "Electronic message boards." These two prohibitions are found in Section B.3-2.1(A)(3) of the Village's zoning ordinances:

> **3-2.1 SIGN REGULATIONS**
>
> **(A) General Requirements**
> . . .
> **(3) Prohibited Signs.** The following signs or use of signs is prohibited.
>
> (a) Flashing Lights. Signs displaying intermittent or flashing lights similar to those used in governmental traffic

signals or used by police, fire, ambulance, or other emergency vehicles.

(b) Use of Warning Words or Symbology. Signs using the words stop, danger, or any other word, phrase, symbol, or character similar to terms used in a public safety warning or traffic signs.

(c) Temporary, Nonpermanent Signs. Temporary, nonpermanent signs, including over-head streamers, are not permitted in any zoning district, unless otherwise specified in these regulations.

*(d) Moving and Flashing Signs (excludes electronic time, temperature, and electronic fuel pricing). Moving and flashing signs, excluding electronic time, temperature, and message signs, are not permitted in any zoning district. This includes pennants, streamers, banners, spinners, propellers, discs, any other moving objects; strings of lights outlining sales areas, architectural features, or property lines; beacons, spots, searchlights, or reflectors visible from adjacent property or rights-of-way.*

(e) Exterior exposed neon signs are prohibited.

*(f) Electronic message boards are prohibited.*

UDO, § B.3-2.1(A)(3) (emphasis added).

¶ 37    As noted above, when interpreting these provisions, we apply the same principles of construction used to interpret statutes. *Morris Commc'ns Corp.*, 365 N.C. at 157, 712 S.E.2d at 872. The terms "Moving and Flashing Signs" and "Electronic message boards" are not given special definitions in the ordinance and we therefore assume that the drafters "intended to give them their ordinary meaning

determined according to the context in which those words are ordinarily used." *Id.*

¶ 38 We begin with the provision addressing "Moving and Flashing Signs." The parties present two fully contradictory interpretations of this provision, both based on what (in that party's view) is the plain and ordinary meaning of the words used in the provision. The Village of Clemmons contends that Visible's digital billboard unquestionably is a "Moving and Flashing Sign" because the static image would change frequently and thus, by its nature, "moves" in the sense that the image displayed on the sign changes to something else.

¶ 39 The Village also argues that this is the only logical interpretation of the provision, in light of the exclusion of electronic time, temperature, and message boards contained in the provision, because if "moving and flashing" only referred to "scrolling text, animation or blinking like 'Rudolph's nose'" and not "a sign that electronically changes its content on a periodic basis," then there would be no need to separately exclude electronic time, temperature, and message signs—signs that, like digital billboards, typically do not move or flash, but instead change their image over time to reflect the updated information.

¶ 40 There are a number of problems with the Village's argument. First, in ordinary English usage, moving means "marked by or capable of movement" and flashing means "to give off light suddenly or in transient bursts." *Merriam-Webster's Collegiate Dictionary* (11th ed. 2003). Neither of these adjectives squarely describe Visible's

proposed digital billboard, which is not capable of movement and has no sudden or transient display of lights.

Second, the exclusion of "electronic time, temperature, and message signs" does not compel an interpretation that includes digital billboards within the definition of moving and flashing signs. Likewise, a contrary interpretation does not render this exclusion superfluous. After all, there could be categories of electronic time, temperature, and message signs that have images in motion (a ticking clock) or are flashing (an electronic sign flashing the phrase "slow down") that the drafters reasonably intended to exempt from this prohibition.

Indeed, another provision in the sign ordinances permits "electronic digital fuel pricing" signs at convenience stores but states that "electronic prices shall not be allowed to flash, blink or move at any time." UDO, § B.3-2.1(G)(3). Notably, this provision recognizes that the terms "moving" and "changing" are different, because the provision then explains that the "digital technology shall solely be used to display the numerical price of fuel and shall only be *changed* when the price of fuel is modified." *Id.* (emphasis added). This demonstrates that the drafters understood some electronic signs can contain moving or flashing features and that "moving" or "flashing" is this context is not the same as the information on the sign changing over time.

Finally, there are specific examples listed after the general term "Moving and

Flashing Signs" and all of these examples—things such as pennants, banners, spinners, beacons, spotlights, and searchlights—are capable of either physically moving or shining light in a sudden or intermittent way. This reinforces the notion that the words "moving" and "flashing" are used in their ordinary meaning. *See Jeffries v. Cty. of Harnett*, 259 N.C. App. 473, 493, 817 S.E.2d 36, 49 (2018).

¶ 44          To be sure, we are not suggesting that it is *unreasonable* to interpret the prohibition on "Moving and Flashing Signs" as applying to a digital billboard like the one proposed by Visible. But that interpretation is not the *only* reasonable one. Visible also asserts an alternative, reasonable interpretation of this provision—one in which a digital billboard capable of changing its static image is not considered a moving or flashing sign and instead, in ordinary English usage, would be described as something else, such as a digital sign or electronic sign, or perhaps, more specifically, a digital or electronic sign capable of changing the information displayed over time.

¶ 45          When there are two or more reasonable interpretations of a law, the law is ambiguous. *JVC Enters., LLC v. City of Concord*, 376 N.C. 782, 2021-NCSC-14, ¶ 10. And, as discussed above, when that ambiguous law is a zoning regulation, we should adopt the reasonable interpretation that favors "the free use of property." *Cumulus Broad.*, 180 N.C. App. at 427, 638 S.E.2d at 15. Accordingly, we reject the Village of Clemmons's argument and hold that the trial court erred by affirming the Board of

Adjustment's determination that the proposed digital billboard was prohibited because it unambiguously fell within the definition of a "Moving and Flashing Sign" under the zoning ordinances.

¶ 46        We next turn to the provision prohibiting "Electronic message boards." Again, the phrase "Electronic message board" is not defined in the ordinance. And unlike the prohibition on "Moving and Flashing Signs," this provision contains no explanatory context. The Village of Clemmons correctly contends that Visible's proposed digital billboard is "electronic." The Village also correctly asserts that the ordinary meaning of a "message board" is a "a board or sign on which messages or notices are displayed." *Merriam-Webster's Collegiate Dictionary* (11th ed. 2003). Combining these two definitions, the Village asserts that any electronic sign displaying any form of message—including any form of electronic billboard—unambiguously fits the definition of an "Electronic message board."

¶ 47        There are several problems with this argument. First, the ordinance contains a definition of the word "sign." That definition is essentially the same as this broad definition of message board advanced by the Village:

> **SIGN**. Any form of publicity which is visible from any public way, directing attention to an individual, business, commodity, service, activity, or product, by means of words, lettering, parts of letters, figures, numerals, phrases, sentences, emblems, devices, designs, trade names or trademarks, or other pictorial matter designed to convey such information . . .

UDO, § A.1-3.

¶ 48        Throughout the zoning ordinances, a board on which a message is displayed is consistently referred to as a "sign" or a "billboard." *See generally*, UDO, § A.1-3 (defining "sign"); UDO, § B.2-5.70 (prohibiting "signs" and "billboards" on transmission towers); UDO, § B.3-2.1 (providing use criteria for "off-premises signs"). Thus, if the intent of this provision was to prohibit all digital signs and billboards, one would expect the drafters to use the term "sign" or "billboard," not a separate term—"message board"—that is undefined and appears nowhere else in the ordinance.

¶ 49        Moreover, in ordinary English usage, one would not look at a looming roadside billboard and describe it as a "message board." It is a sign or a billboard. Similarly, in ordinary usage, there is a narrower category of signs that could be described as "electronic message boards"—things such as the mobile electronic signs seen near road construction, or the digital message boards often affixed beneath a business's name or logo and listing business hours or product offerings. Visible included an example of this type of electronic message board in the record. In ordinary English usage, one would not describe these types of electronic message boards as "billboards."

¶ 50        Simply put, this provision, too, has more than one reasonable interpretation.

It is ambiguous. As with the "Moving and Flashing Signs" provision, we must resolve this ambiguity in favor of the reasonable interpretation that permits the free use of property. *Cumulus Broad.*, 180 N.C. App. at 427, 638 S.E.2d at 15. Accordingly, we again reject the Village of Clemmons's argument and hold that the trial court erred by affirming the Board of Adjustment's determination that the proposed digital billboard was prohibited because it unambiguously fell within the definition of an "Electronic message board" under the zoning ordinances.

¶ 51     We conclude by noting that our holding today does not impact the authority of municipalities, through zoning ordinances, to restrict or prohibit digital billboards like the one proposed by Visible. But the drafters of zoning ordinances that restrict property rights have a responsibility to provide clear rules on which property owners can rely. This is so because zoning regulations are not intended to be a system of murky, ambiguous rules where the permitted uses of property ultimately depend on the interpretive discretion of government bureaucrats.

¶ 52     Here, for example, the zoning ordinances could include a prohibition on "digital billboards" or "electronic billboards," terms that are widely used and readily understood, or more specifically prohibit digital or electronic billboards that change the displayed information over time. Similarly, the ordinances could include within the overlay district regulations a statement that those rules supersede any other regulations otherwise applicable within the overlay district, including the sign

regulations.

¶ 53 The convoluted, conflicting, ambiguous provisions at issue in this case did not do so and instead yielded competing reasonable interpretations. When that occurs, we will resolve this interpretive competition in favor of the free use of property.

## Conclusion

¶ 54 We reverse the trial court's order and remand this matter for entry of an order reversing the Board of Adjustment's decision.

REVERSED AND REMANDED.

Judges DILLON and GRIFFIN concur.