STROUD, Judge.
 

 *56
 
 Petitioner-plaintiffs Michael Long and Marie Long appeal a Superior Court (1) "DECISION AND ORDER" affirming the Currituck County Board of Adjustment's decision "that a structure proposed for construction on property owned by Respondent Elizabeth Letendre is a single family detached dwelling under the Currituck County Unified Development Ordinance and a permitted use in the Single Family Residential Outer Banks Remote Zoning District" and dismissing petitioners' petition for writ of certiorari and (2) "ORDER" denying petitioners' petition for review of the Currituck County Board of Adjustment's decision and again affirming the Currituck County Board of Adjustment's decision. For the following reasons, we reverse and remand.
 

 I. Background
 

 Respondent Ms. Letendre owns an ocean-front lot in Currituck County and planned to build a project of approximately 15,000 square feet on the lot. The project consisted of "a three-story main building that includes cooking, sleeping, and sanitary facilities" and two "two-story side buildings that include sleeping and sanitary facilities." The main building and side buildings are connected by "conditioned hallways" so that all three may be used together as one unit, and each of the three buildings is approximately 5,000 square feet. Petitioners, who are adjacent property owners, challenged the construction of respondent Letendre's project claiming that the project as proposed was not a permitted use in the Single Family Residential Outer Banks Remote District ("SF District") because it is not a "single family detached dwelling" ("Single Family Dwelling") as defined by the Currituck County Unified Development Ordinance ("UDO").
 

 The Currituck County Planning Director determined that respondent Letendre's project was a "single family detached dwelling;" the Currituck County Board of Adjustment ("BOA") affirmed the Planning Director's decision. Petitioners then appealed the BOA's decision to the Superior Court, and the Superior Court agreed, concluding that the
 
 *57
 
 "structure proposed for construction on property owned by Respondent Elizabeth Letendre is a single family detached dwelling under the Currituck County Unified Development Ordinance and a permitted use in the Single Family Residential Outer Banks Remote Zoning District" and therefore denied "Petitioner's Petition for Review of the Currituck County Board of Adjustments Order" and affirmed "[t]he Order of the Currituck County Board of Adjustments dated May 9, 2014[.]" Petitioners appealed the Superior Court's orders to this Court, and for the reasons discussed below, we reverse and remand.
 

 On appeal, there is no real factual issue presented but only an issue of the interpretation of the UDO. The parties have made many different arguments, with petitioners focusing upon the applicable definitions and provisions of the UDO, and respondents focusing upon the intended use and function of the project. This case ultimately turns upon the definition of a "single family detached dwelling[.]" Currituck County, N.C., Unified Development Ordinance of Currituck County, North Carolina § 10.1.7 ("UDO").
 

 II. Single-Family Residential Outer Banks Remote District
 

 Petitioners first contend that "the Superior Court erred in affirming the Currituck County Board of Adjustment's decision to uphold the planning director's determination that the proposed structures met the definition of the term 'single family detached dwelling,' as that term is used and defined in the Currituck County Unified Development Ordinance." (Original in all caps.) The parties agree on the background underlying this appeal
 
 *837
 
 and one of the most salient facts is that the project is comprised of multiple buildings.
 
 [1]
 
 The project "plans indicate a three-story main building that includes cooking, sleeping, and sanitary facilities; as well as two-story side buildings that include sleeping and sanitary facilities." Each building is approximately 5,000 square feet.
 
 [2]
 
 The main
 
 *58
 
 building and side buildings are connected by "conditioned hallways[.]"
 
 [3]
 
 The hallways were originally proposed as uncovered decking but the Currituck County Planning Director determined that the uncovered decking did not comply with the ordinances, and thus the project plans were revised to connect the buildings via "conditioned hallways" which the Planning Director determined would make the entire project "a single principal structure" based upon the functioning of the three buildings as one dwelling.
 

 In this appeal, the issue is the county's classification of the project as a "single principal structure" based upon the use or function of the project. The parties agree that (1) the classification of the project is governed by the UDO; (2) pursuant to the UDO the lot is zoned as SF District; and (3) this project must fit within the definition of Single Family Dwelling in order to comply with the UDO. Both the BOA and the Superior Court determined that the project did constitute a Single Family Dwelling, but on appeal, interpretation of a municipal ordinance requires this Court to engage in
 
 de novo
 
 review.
 
 See
 

 Morris Commc'ns Corp. v. City of Bessemer City Zoning Bd. of Adjust.,
 

 365 N.C. 152
 
 , 155,
 
 712 S.E.2d 868
 
 , 870-71 (2011) ("We review the trial court's order for errors of law.... Reviewing courts apply
 
 de novo
 
 review to alleged errors of law, including challenges to a board of adjustment's interpretation of a term in a municipal ordinance.")
 

 In reviewing a decision of the Board of Adjustment for errors of law in the application and interpretation of a zoning ordinance, the superior court applies a
 
 de novo
 
 standard of review and can freely substitute its judgment for that of the board. Similarly, in reviewing the judgment of the superior court, this Court applies a
 
 de novo
 
 standard of review in determining whether an error of law exists and we may freely substitute our judgment for that of the superior court. Questions involving the interpretation of ordinances are questions of law....
 

 In determining the meaning of a zoning ordinance, we attempt to ascertain and effectuate the intent of the legislative body. Unless a term is defined specifically within the ordinance in which it is referenced, it should be assigned its plain and ordinary meaning. In
 
 *59
 
 addition, we avoid interpretations that create absurd or illogical results.
 

 Ayers v. Bd. of Adjust. for Town of Robersonville,
 

 113 N.C.App. 528
 
 , 530-31,
 
 439 S.E.2d 199
 
 , 201 (1994) (citations and quotation marks omitted). We therefore review "the application and interpretation of [the] zoning ordinance"
 
 de novo.
 
 Id.
 

 Before turning to the specific applicable ordinances, we note that the UDO itself provides that "[w]ords and phrases shall be construed according to the common and approved usage of the language, but technical words and phrases that may have acquired a peculiar and appropriate meaning in law shall be construed and understood according
 
 *838
 
 to such meaning." UDO § 10.1.7. The UDO provides that the SF District
 

 [i]s established to accommodate very low density residential development on the portion of the outer banks north of Currituck Milepost 13. The district is intended to accommodate limited amounts of development in a manner that preserves sensitive natural resources, protects wildlife habitat, recognizes the inherent limitations on development due to the lack of infrastructure, and seeks to minimize damage from flooding and catastrophic weather events.
 
 The district accommodates single-family detached homes
 
 .... Public safety and utility uses are allowed, while commercial, office, and industrial uses are prohibited.
 

 UDO § 3.4.4 (emphasis added). The UDO defines "DWELLING, SINGLE-FAMILY DETACTED" as follows: "
 
 A residential building
 
 containing not more than one dwelling unit to be occupied by one family, not physically attached to any other principal structure." UDO § 10.51 (emphasis added).
 
 [4]
 
 Thus, the definition of a Single Family Dwelling has five elements: (1) A building, (2) for residential use, (3) containing not more
 
 *60
 
 than one dwelling unit,
 
 [5]
 
 (4) TO BE OCCUpied by one family, and (5) not physically attached to any other "principal structure."
 
 [6]
 
 The definition of a Single Family Dwelling includes portions that address the physical structure of the proposed dwelling: "a building[,]" "containing not more than one dwelling unit[,]" and "not physically attached to any other principal structure."
 

 Id.
 

 But portions of the definition of a Single Family Dwelling also address the use and function of the proposed dwelling, requiring the building be for "residential" use and "occupied by one family[.]"
 

 Id.
 

 To qualify as a Single Family Dwelling, a project must fulfill each element of the definition, including both structural and functional provisions. The parties' briefs have addressed each part of the definition at length, but the structural portion of the definition, and particularly the first element-a building-is controlling in this case.
 

 Petitioners argue that the project is not "[
 
 a
 
 ] residential building [,]" but rather multiple buildings.
 

 Id.
 

 (emphasis added). Respondent Currituck County barely addresses that the project must be "a residential building" but focuses mainly on the use of the project and meaning of "one dwelling unit[.]"
 

 Id.
 

 Respondent Elizabeth Letendre contends that "
 
 the characterization of a 'building'
 
 and the methods used to lay a foundation
 
 does
 
 [ (sic) ]
 
 not matter under the UDO.
 
 The connection of the rooms so as to ensure that it will 'function' as a 'dwelling unit' is what counts." (Emphasis added.) Respondent Letendre further argues that that petitioners' arguments based upon the word "building" being singular is "a complete red herring" which "only works if one ignores the UDO definitions, ignores what [the Planning Director] wrote when analyzing two
 
 *839
 
 different sets of plans, and ignores what he said under oath at the BOA hearing." Respondent Letendre would be correct if the
 
 *61
 
 UDO defined a Single Family Dwelling based only upon the function of the project-whether it has a "residential" use as "one dwelling unit" for "one family"-but again, the use argument fails to address the structural portion of the definition: "[a] building."
 

 Id.
 

 We have considered the Planning Director's interpretations of the UDO and his testimony, which focused upon the use and function of the three buildings, but this Court is required to perform a
 
 de novo
 
 interpretation of the UDO, a municipal ordinance.
 
 See
 

 Morris Commc'ns Corp.,
 

 365 N.C. at 155
 
 ,
 
 712 S.E.2d at 871
 
 .
 

 We therefore turn to the applicable ordinance provisions and definitions. The UDO definition of "BUILDING" provides, "See 'Structure'." UDO § 10.43. The definition of "STRUCTURE" provides that anything that "requires a location on a parcel of land" is a "structure" and thereby, apparently, also a "building":
 

 [a]nything constructed, installed, or portable, the use of which requires a location on a parcel of land. This includes a fixed or movable building which can be used for residential, business, commercial, agricultural, or office purposes, either temporarily or permanently. "Structure" also includes, but is not limited to, swimming pools, tennis courts, signs, cisterns, sewage treatment plants, sheds, docks, mooring areas, and similar accessory construction.
 

 UDO § 10.83. Thus, pursuant to the UDO, a "building" is a "structure [,]" since a "building" is "constructed [or] installed" and it "requires a location on a parcel of land."
 

 Id.
 

 As all of the "buildings" in the project are constructed on a "location on a parcel of land" each is both a "building" and a "structure[.]"
 

 Id.
 

 There is no dispute that this project includes multiple "buildings" or "structures." The ordinance allows only for a singular "building[,]" UDO § 10.51, although a project may include other structures such as "swimming pools, tennis courts, signs, cisterns, sewage treatment plants, sheds, docks, mooring areas, and similar accessory construction[,]" all of which are obviously not buildings in the colloquial sense. UDO § 10.83. These other "structures" instead serve the needs of residents of the "building" which is the dwelling.
 
 See generally
 
 id.
 

 Thus far, at each level of review, the focus has been on the residential use of the project and the definition of "one dwelling unit" based upon the intended function of the project, while overlooking the essential element that such dwelling unit must be within "
 
 a
 
 residential building[.]" UDO § 10.51. Even if we assume that the use of the project is residential and that the multiple buildings will be used as "one dwelling
 
 *62
 
 unit" for "one family," the project still includes three "buildings."
 

 Id.
 

 The 22 November 2013, LETTER OF DETERMINATION from the Planning Director describes the project as follows: "The plans indicate a three-story main building that includes cooking, sleeping, and sanitary facilities; as well as two-story side buildings that include sleeping and sanitary facilities. The building plans also show two conditioned hallways connecting rooms within the proposed single family detached dwelling." This is an accurate and undisputed description of the project. The BOA affirmed the Planning Director's description, and the Superior Court affirmed the BOA's decision. The description is not challenged on appeal. Thus, the Planning Director, BOA, and the Superior Court all have found that this project includes a main building and two side buildings, each of approximately 5000 square feet. No one has ever described this project as a single "building[,]" and they simply did not address the structural portion of the plain definition of a Single Family Dwelling.
 
 See generally
 
 UDO § 10.51.
 

 Our interpretation of the definition of Single Family Dwelling is also consistent with the definitions of other types of dwellings in the ordinances.
 
 See generally
 
 UDO §§ 10.50-51. The UDO provides eleven distinct definitions regarding dwellings, including: duplex dwelling, live/work dwelling, mansion apartment dwelling, manufactured home dwelling-class A, manufactured home dwelling-class B, manufactured home dwelling-class C, multi-family dwelling, single-family detached dwelling, townhouse dwelling, upper story dwelling, and dwelling unit. UDO §§ 10.50-51. The other definitions are primarily functional, and the definition of the Single Family Dwelling is the
 
 only
 
 definition
 
 *840
 
 which includes "a residential building" or in fact,
 
 any
 
 reference to a "building" in the definition.
 
 Contrast
 
 UDO §§ 10.50-51. Thus, "a residential building"-singular-is a necessary and not merely superfluous part of the definition a Single Family Dwelling.
 
 Contrast
 
 UDO §§ 10.50-51.
 

 Yet the definition of Single Family Dwelling clearly allows more than one "building" or "structure" to be constructed on the same lot, so the presence of three "buildings" alone does not disqualify the project. However, the remainder of the definition does disqualify the project. The last element in the definition of a Single Family Dwelling is "[n]ot physically attached to
 
 any other
 
 principal structure." UDO § 10.51. (emphasis added). In other words, the Single Family Dwelling is "detached[,]" which is part of the title.
 

 Id.
 

 The UDO provides that "[w]ords used in the singular number include the plural number and the plural number includes the singular number, unless the context of the particular usage clearly indicates otherwise." UDO § 10.1.11. In the definition of Single
 
 *63
 
 Family Dwelling, the context does clearly indicate otherwise. We cannot substitute the word "buildings" for "a building" without rendering the last phrase of the definition, "not physically attached to any other principal structure" either useless or illogical. The Planning Director determined that the multiple buildings together function as a principal structure, but even if they are functionally used as one dwelling unit, each individual building is itself a "structure."
 
 See
 
 §§ 10.43, .83. Thus, each building is necessarily either an "accessory structure" or a principal structure. And respondents do not argue that the side buildings are "accessory structures;" they argue only that the entire project
 
 functions
 
 as one "principal structure." Although the ordinance does not define principal structure, it does define "accessory structures" as "subordinate in use
 
 and square footage
 
 " to a principal structure. UDO § 10.34 (emphasis added).
 
 [7]
 
 Even assuming that the two side "buildings" or "structures" are subordinate in use to the center "building," it is uncontested that all of the buildings are approximately 5,000 square feet. No building is subordinate in square footage to another so none can meet the definition of an "accessory structure."
 
 See
 
 id.
 

 This would mean that each building is a principal structure, however a Single Family Dwelling only allows for one.
 
 See
 
 UDO § 10.51. In addition, the ordinary meaning of "principal" is in accord.
 
 See
 
 Webster's Seventh New Collegiate Dictionary 676 (1969). "Principal" is defined as "most important[.]"
 

 Id.
 

 There can be only one "principal structure" on a lot in the SF District and that principal structure can be attached only to "accessory structures[.]"
 
 See generally
 
 UDO § 10.51.
 

 Respondent Currituck County argues that to interpret the UDO to allow only one "building" would create "absurd consequence[s]" because this would mandate that "nowhere in Currituck County could a property owner construct a single-family residential dwelling with wings, supported by their own foundation, connected by conditioned space or connect a main house to a garage with bedroom or other habitable space located above by way of conditioned space." But these hypotheticals are not comparable to this project, since both include one building, the main house, which is a principal structure and is physically attached to "accessory structures," the wings or the garage with a bedroom above the garage.
 
 See
 
 UDO § 10.34. In the hypotheticals, the accessory structures are "subordinate in use and square footage"
 

 *64
 
 to
 
 a
 
 principal structure.
 

 Id.
 

 Perhaps a more "absurd" result would be if we were to read the ordinances to focus only upon the "use" portion of Single Family Dwelling definition, as respondents argue, while ignoring the structural portion, since it would not matter how many "buildings" are connected by "conditioned hallways" if they are
 
 functioning
 
 as one dwelling for one family. Were we to adopt respondent Currituck County's interpretation, a project including ten 5,000 square foot buildings, all attached
 
 *841
 
 by conditioned hallways, which will be used as a residential dwelling for one family with a kitchen facility in only one of the buildings would qualify as a Single Family Dwelling. Respondents' interpretation would also be contrary to the stated purpose of the zoning, which calls for "very low density residential development" and "is intended to accommodate limited amounts of development in a manner that preserves sensitive natural resources, protects wildlife habitat, recognizes the inherent limitations on development due to the lack of infrastructure, and seeks to minimize damage from flooding and catastrophic weather events." UDO § 3.4.4.
 

 In summary, this project includes multiple "buildings," none of which are "accessory structures;"
 
 see
 
 UDO § 10.34. Any determination that this project fits within the definition of Single Family Dwelling requires disregarding the structural elements of the definition, including the singular "a" at the beginning of the definition to describe "building" and allowing multiple attached "buildings," none of which are accessory structures, to be treated as a Single Family Dwelling in clear contravention of the UDO. UDO § 10.51. The project does not fit within the plain language of the definition of Single Family Dwelling, and thus is not appropriate in the SF District.
 
 See
 
 UDO §§ 3.4.4; 10.51. We therefore must reverse the Superior Court order and remand for further proceedings consistent with this opinion.
 

 III. Conclusion
 

 For the foregoing reasons, we reverse and remand.
 

 REVERSED AND REMANDED.
 

 Judges CALABRIA and INMAN concur.
 

 [1]
 

 We have had difficulty determining what noun to use to describe the buildings which are the subject of this litigation. In this opinion, we will refer to the entire group of buildings, variously described in the record and briefs as three or four separate buildings, as the "project." Since the words "building" and "structure" have definitions in the ordinance which are somewhat different than the common use of these words, we will place these words in quotation marks if we are using them as terms defined in the ordinance; if these words are not in quotes, we are using them colloquially.
 
 See
 
 Currituck County, N.C., Unified Development Ordinance of Currituck County, North Carolina §§ 10.43, .83.
 

 [2]
 

 In addition to the county's approval, the project required a Coastal Area Management Act ("CAMA") permit. Generally speaking, CAMA regulations require a greater set-back from the ocean for larger buildings; in other words, a 15,000 square foot building would need to be "set back further" than a 5,000 square foot building.
 

 [3]
 

 The Planning Director defined "conditioned space" as "[a]n area or room within a building being heated or cooled, contained uninsulated ducts, or with a fixed opening directly into an adjacent conditioned space[.]"
 

 [4]
 

 Many of the ordinance provisions in our record are identified by a clear subsection number. An example is "Subsection 3.4.4: Single-Family Residential Outer Banks Remote (SFR) District." UDO § 3.4.4. However, in Chapter 10 of the UDO, at least for the pages in our record, definitions of terms appear in alphabetical order without specific subsection numbering for each term. Our citations in this opinion are thus based upon the large bold number in the bottom right-hand corner of each page of the UDO. We also have to rely solely upon the ordinance provisions as provided in the record since this Court cannot take judicial notice of municipal ordinances.
 
 See
 

 Surplus Co. v. Pleasants,
 

 263 N.C. 587
 
 , 592,
 
 139 S.E.2d 892
 
 , 896 (1965) ("[W]e do not take judicial notice of a municipal ordinance or resolution.")
 

 [5]
 

 The UDO defines "dwelling unit" as "one room or rooms connected together, constituting a separate, independent housekeeping establishment for owner or renter occupancy, and containing independent cooking and sleeping facilities, and sanitary facilities." UDO § 10.51.
 

 [6]
 

 Although the term "structure" is defined by the UDO, the term "principal structure" is not.
 
 See
 
 UDO § 10.83. The UDO does define "accessory structure" as "[a] structure that is subordinate in use and square footage to a principal structure or permitted use." UDO § 10.34. In his testimony before the BOA on 13 March 2014, the Planning Director described his understanding of the term: "I would consider the building that contains all the components of a single-family detached dwelling as the principal structure. I consider the other structures to be accessory structures that weren't consistent with the ordinance or did not meet the requirements of the ordinance." The Planning Director went on to clarify that he considered all the buildings of the project as one "principal structure": "I think collectively the buildings are connected with the conditioned space, and I think they function as a principal structure."
 

 [7]
 

 Again, "principal structure" is not defined, but it is clear a principal structure cannot be a structure that is "subordinate in use and square footage" as that would make it an "accessory structure." UDO § 10.34. In his testimony before the BOA on 13 March 2014, the Planning Director described his understanding of the term: "I would consider the building that contains all the components of a single-family detached dwelling as the principal structure. I consider the other structures to be accessory structures that weren't consistent with the ordinance or did not meet the requirements of the ordinance. The Planning Director went on to clarify that he considered all the buildings of the project as one "principal structure: "I think collectively the buildings are connected with the conditioned space, and I think they function as a principal structure.