**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 22-1785**

───────────────

CURRITUCK COUNTY, NORTH CAROLINA,

Plaintiff − Appellant,

MARIE LONG; MICHAEL LONG,

Intervenors – Appellants,

v.

ELIZABETH E. LETENDRE,

Defendant – Appellee.

───────────────

Appeal from the United States District Court for the Eastern District of North Carolina, at Elizabeth City.  Terrence W. Boyle, District Judge.  (2:19−cv−00027−BO)

───────────────

Argued:  October 25, 2023                          Decided:  May 17, 2024

───────────────

Before DIAZ, Chief Judge, THACKER, Circuit Judge, and Julie R. RUBIN, United States District Judge for the District of Maryland, sitting by designation.

───────────────

Affirmed by published opinion.  Chief Judge Diaz wrote the opinion, in which Judge Thacker and Judge Rubin joined.

───────────────

**ARGUED:** George Nicholas Herman, BROUGH LAW FIRM, PLLC, Chapel Hill, North Carolina; George Bullock Currin, Raleigh, North Carolina, for Appellants.  Scott Elliott Bayzle, PARKER POE ADAMS & BERNSTEIN LLP, Raleigh, North Carolina, for

Appellee.  **ON BRIEF:**  Stephen V. Carey, Jonathan E. Hall, Michael J. Crook, PARKER POE ADAMS & BERNSTEIN LLP, Raleigh, North Carolina, for Appellee.

DIAZ, Chief Judge:

The Chesapeake is a 15,000 square foot vacation home owned by Elizabeth LeTendre[1] and located in Currituck County, North Carolina. For over a decade, Currituck County, LeTendre, and LeTendre's neighbors, Marie and Michael Long, have been embroiled in litigation over whether the Chesapeake complies with county and state zoning requirements.

In *Long v. Currituck County*, the North Carolina Court of Appeals ruled that the Chesapeake violated a county zoning ordinance. 787 S.E.2d 835, 841 (N.C. Ct. App. 2016). When LeTendre couldn't bring the house up to code, the County sued her in state court to enforce *Long's* mandate and hold LeTendre in contempt if she refused to comply.

LeTendre removed the case to federal court, where she sought a declaratory judgment that the Chesapeake now complies with both county and state requirements. In her view, a recent amendment to North Carolina's state zoning law abrogates *Long*.

The district court agreed with LeTendre. We do as well and so affirm.

I.

A.

Our story begins in 2011, when LeTendre bought an oceanfront plot of land in the Outer Banks, within Currituck County.[2]

---

[1] LeTendre's last name is not spelled consistently in the record. But as her brief spells it "LeTendre," we adopt that style.

[2] The procedural history is dense, but necessary to an understanding of the dispute.

3

The lot is subject to both state and county zoning requirements, including the Currituck County Unified Development Ordinance. *See* Currituck County, N.C., Unified Dev. Ordinance (2023), https://currituckcountync.gov/unified-development-ordinance/ [https://perma.cc/N48F-763Z]. And it's in an area the County has designated for zoning purposes as "Single Family Residential Outer Banks Remote." J.A. 224, *see also* Unified Dev. Ordinance § 3.4.4, https://currituckcountync.gov/wp-content/uploads/chapter-3-zoning-districts-23oct25.pdf [https://perma.cc/EZD2-NUMV].

That zoning designation allows only homes that are "single-family detached dwellings," defined as "a residential building containing not more than one dwelling unit to be occupied by one family, not physically attached to any other principal structure." Unified Dev. Ordinance § 10.5, https://currituckcountync.gov/wp-content/uploads/chapter-10-definitions-measurement-23oct25.pdf [https://perma.cc/9SCL-J48C]. But while hotels, bed and breakfasts, and other commercial properties are forbidden, the Ordinance doesn't limit the *use* of such single-family homes. So owners may rent out their properties on Airbnb and similar platforms. Unified Dev. Ordinance § 3.4.4.

LeTendre sought approval from multiple state and county agencies to construct a vacation home, the Chesapeake, on the lot. As designed, the Chesapeake is gargantuan, boasting 24 bedrooms, 25 bathrooms, and a pool.

Under a North Carolina state agency regulation for coastal properties, a development may be set back 60 feet from the shoreline only if all structures on the

4

property are less than 5,000 square feet apiece. *See* 15A N.C. Admin. Code 7H.0306(a)(3)(A). Otherwise, the development must sit farther back from the shore. *Id.*

LeTendre wanted to build 60 feet from the shore. So her architect designed the home to have a central area and two side wings, each structurally independent of each other and less than 5,000 square feet. The side wings are perpendicular to the central area and connected to it by enclosed, air-conditioned hallways, so the home is U-shaped.

LeTendre submitted her plans to the Currituck County Planning Director, who confirmed that the Chesapeake is a single-family detached dwelling and that it "complies with the county's [Ordinance]." J.A. 97. But LeTendre's neighbors, the Longs, appealed that determination to the Currituck County Board of Adjustment. The Board affirmed that the Chesapeake was a single-family detached dwelling under the Ordinance.

The Longs then appealed the Board's decision in state court. That court too agreed that the Chesapeake was a single-family detached dwelling under the Ordinance, and the Longs again appealed.

In the meantime, the County issued LeTendre a building permit. But LeTendre ran into a wrinkle with the North Carolina Department of Insurance, which classified the Chesapeake as a hotel. LeTendre appealed that classification to the Building Code Council, a state agency empowered by statute to administer and amend the North Carolina State Building Code, the state's compendium of zoning rules. *See* N.C. Gen. Stat. §§ 143-141, 143-138(d); *see also Greene v. City of Winston-Salem*, 213 S.E.2d 231, 237 (N.C. 1975). North Carolina law also gives the Council "the duty . . . to give interpretations of such

5

provisions of the Building Code as shall be pertinent to the matter at issue." N.C. Gen. Stat. § 143-141(b).

The Council reversed the Department of Insurance and determined that "the proper occupancy classification for the project is that of 'one and two family dwelling' as defined in Section 101.2 of the [North Carolina Residential Code]." J.A. 249.

Meanwhile, the Longs pursued their Board appeal before the North Carolina Court of Appeals. That court agreed with the Longs that the Chesapeake wasn't a "single-family detached dwelling" under the Ordinance. *Long*, 787 S.E.2d at 841.

The *Long* court explained that "[t]he ordinance allows only for a singular building." *Id.* at 839. And it found that the Chesapeake is made up of *three* buildings—the main building and two side buildings. *Id.*

The court acknowledged that this alone wasn't dispositive because "the [Ordinance's] definition of Single Family Dwelling clearly allows more than one 'building' or 'structure' to be constructed on the same lot," so long as there's no more than one "principal structure." *Id.* at 840. As an example, it explained that a homeowner could place a small pool house or a shed on her property if it was an "accessory structure" subordinate in square footage to the main building. *Id.* But since the Chesapeake's side wings are the same square footage as the main area, they functioned as three *principal* structures and violated the Ordinance. *Id.* at 840–41.

By this point, construction on the Chesapeake was 95% complete. After the appeals court ruling, the County issued a stop work order and, later, a Notice of Violation, which instructed LeTendre to modify the Chesapeake's structure to comply with the Ordinance.

LeTendre responded with new building plans, which were essentially identical to the original plans. The County determined that the new plans still violated the Ordinance.

LeTendre then sued the County in state court, seeking injunctive relief, and ultimately a declaratory judgment preventing the County from enforcing *Long*'s mandate. She alleged that the Ordinance was unconstitutional, under both the North Carolina and federal constitutions, and otherwise violated state law.

The state court held that LeTendre was likely to succeed on the merits of her claims and granted her a preliminary injunction. It ordered the County to rescind its stop work order, so LeTendre could finish construction, which she did in the summer of 2017.

The County and the Longs then appealed, and the North Carolina Court of Appeals reversed. *Letendre v. Currituck County*, 817 S.E.2d 73, 107 (N.C. Ct. App. 2018).

The Court of Appeals held that LeTendre wasn't likely to succeed on the merits of her claims, and that *Long* established that her home wasn't a single-family detached dwelling under the Ordinance. *Id.* at 87. The court rejected LeTendre's claim based on the Building Code Council decision. *Id.* at 99. Though the Council found that the Chesapeake was a "one family dwelling" under *state* law, the court held that its decision didn't impact the County's application of *its* Ordinance. *Id.*

LeTendre sought further review, but the Supreme Court of North Carolina denied her petition for a writ of certiorari. *Letendre v. Currituck County*, 822 S.E.2d 641 (N.C. 2019) (Mem.).

7

B.

But everything changed on July 11, 2019, when the North Carolina legislature enacted Session Law 2019-111.  2019 N.C. Sess. Laws 111. That law amended a provision of the North Carolina zoning law, by adding the following italicized language:

> A county may not use a definition of *building, dwelling*, dwelling unit, bedroom, or sleeping unit that is inconsistent with any definition of the same in another statute or in a rule adopted by the State agency, *including the State Building Code Council.*

*See* 2019 N.C. Sess. Laws 111 § 1.17.(a).  And it changed the prohibition against county definitions that are "more expansive than" the corresponding state definitions, to prohibit county definitions that are "inconsistent with" the State's.  *Compare* N.C. Gen. Stat. § 153A-346(b) (amended 2019), *with* 2019 N.C. Sess. Laws 111 § 1.17.(a).[3]

Shortly after the amendment passed, the County again sued LeTendre in state court, seeking to compel her to modify the Chesapeake so that it complied with the Ordinance. LeTendre removed the case to federal court, asserting diversity jurisdiction.

LeTendre also counterclaimed, alleging that she was entitled to a declaratory judgment that the 2019 zoning amendment abrogated *Long* and *Letendre*, and that the Chesapeake now complied with state and county zoning law.  She argued that because the state and county definitions of "dwelling" were inconsistent under the amendment, the

---

[3] The statute has since been amended slightly and recodified.  It now reads, "When adopting regulations under this Article, a local government may not use a definition of building, dwelling, dwelling unit, bedroom, or sleeping unit that is inconsistent with any definition of those terms in another statute or in a rule adopted by a State agency, including the State Building Code Council."  N.C. Gen. Stat. § 160D-706(b).

8

Building Code Council decision controlled and overrode the County's application of its Ordinance.

The County moved to remand the case to state court, and the Longs moved to intervene. *Currituck County v. LeTendre*, No. 2:19-cv-27, 2020 WL 707179, at *2, *5 (E.D.N.C. Feb. 12, 2020). LeTendre opposed the remand motion, and moved for a preliminary injunction under the All Writs Act to enjoin the state court proceedings.[4] *Id.* at *3. The district court denied all three motions. *Id.* at *5.

LeTendre then moved again for a preliminary injunction, this time under Federal Rule of Civil Procedure 65. With the County's support, the Longs moved to intervene to oppose the preliminary injunction motion, and to join the County in seeking summary judgment on LeTendre's declaratory judgment counterclaim. The County and LeTendre cross-moved for partial summary judgment on that claim.

The district court granted LeTendre's motion for partial summary judgment and denied her motion for a preliminary injunction as moot. *Currituck County v. LeTendre*, No. 2:19-cv-27, 2020 WL 6750429, at *5 (E.D.N.C. Nov. 17, 2020). It also granted the Longs' motion to intervene, but it denied the County's motion for partial summary judgment, which the Longs had sought to join. *Id.*

The court held that the County's interpretation of a single-family detached dwelling, as applied to the Chesapeake, is "inconsistent with the State Building Code's definition of a dwelling[.]" *Id.* It acknowledged that the plain text of the state and county definitions

---

[4] These state court proceedings have been stayed.

9

of "building" and "dwelling" didn't conflict. *Id.* at *4. But it held that the terms "single-family detached dwelling" and "one family dwelling" were equivalent, and the legislative amendment barred the County from interpreting "single-family detached dwelling" inconsistently with the Code's definition of "one family dwelling." *Id.* at *5.

That's because, the court found, "both [terms] apply to buildings or structures for living, sleeping, and sanitation." *Id.* And both "also apply to 'a' or 'any building'; in other words, a single and not multiple buildings[.]" *Id.* The court concluded that under the amendment, "a building cannot be determined to be a one family dwelling under the Residential Building Code but not a one-or-single family dwelling under a local zoning ordinance." *Id.* So it granted LeTendre partial summary judgment on her declaratory judgment counterclaim. *Id.*

The Longs and the County moved for reconsideration. Now as intervenors, the Longs also moved (1) for partial summary judgment on LeTendre's declaratory judgment counterclaim, and (2) to admit other evidence regarding the North Carolina Department of Insurance's classification of the Chesapeake. LeTendre moved to strike that motion.

The court denied the motions for reconsideration and granted LeTendre's motion to strike. *Currituck County v. LeTendre*, No. 2:19-cv-27, 2021 WL 6206562, at *2 (E.D.N.C. June 10, 2021). It reviewed the Longs' "new evidence," but found that none of it was "material to its prior holding." *Id.*

LeTendre then moved to dismiss her remaining counterclaims. The district court granted that motion and entered final judgment for LeTendre. *Currituck County v. LeTendre*, No. 2:19-cv-27, 2022 WL 1813900, at *3 (E.D.N.C. June 2, 2022).

10

This appeal followed.

## II.

## A.

To resolve this case, we must determine whether the zoning law amendment passed by the North Carolina legislature in 2019 abrogated *Long* and *Letendre*, as the district court so held.

We review the district court's grant of summary judgment de novo. *S.C. Green Party v. S.C. State Election Comm'n*, 612 F.3d 752, 755 (4th Cir. 2010). This case presents a question of statutory interpretation, which we also review de novo. *Farm Lab. Org. Comm. v. Stein*, 56 F.4th 339, 346 (4th Cir. 2022). When interpreting a North Carolina statute, we apply North Carolina law and "determine how the Supreme Court of North Carolina would rule were it to decide this case." *Whitmire v. S. Farm Bureau Life Ins. Co.*, 52 F.4th 153, 157 (4th Cir. 2022). Since no North Carolina court has ever interpreted this amendment, we use the Supreme Court of North Carolina's methodology to interpret it in the first instance. *Id.*

Under North Carolina law, the "primary goal" of statutory interpretation is to "effectuate the purpose of the legislature in enacting the statute." *Liberty Mut. Ins. v. Pennington*, 573 S.E.2d 118, 121 (N.C. 2002). To divine legislative intent, we first look to the statute's plain language. *Frye Reg'l Med. Ctr., Inc. v. Hunt*, 510 S.E.2d 159, 163 (N.C. 1999). Normally, if the language is clear, we give the statute its plain meaning and end our inquiry. *Id.* If the language is ambiguous or unclear, however, we look to the

11

"legislative history, the spirit of the act[,] and what the act seeks to accomplish." *Lenox, Inc. v. Tolson*, 548 S.E.2d 513, 517 (N.C. 2001) (cleaned up).

Finally, when "a literal interpretation of the language of a statute will lead to absurd results, or contravene the manifest purpose of the Legislature, as otherwise expressed, the reason and purpose of the law shall control and the strict letter thereof shall be disregarded." *Frye*, 510 S.E.2d at 163 (cleaned up); *see also Sheffield v. Consol. Foods Corp.*, 276 S.E.2d 422, 435 (N.C. 1981) ("The language of a statute should always be interpreted in a way which avoids an absurd consequence.").

## B.

Under the legislative amendment, a county may not "use a definition" of "building" or "dwelling" that "is inconsistent with any definition of those terms . . . in a rule or statute adopted by a State agency, including the State Building Code Council." N.C. Gen. Stat. § 160D-706(b). And we read the amendment not merely to bar inconsistencies in the literal text of the state and county definitions, but also to bar inconsistent applications of those definitions. If the County's definition or interpretation of "building" in its Ordinance conflicts with the Building Code Council's rule—here, the state Residential Building Code—the Council's definition governs. We hold that it does, so the amendment makes the Chesapeake compliant with both zoning codes.[5]

---

[5] Appellants haven't claimed that the Chesapeake fails to satisfy any other element of the Ordinance's definition of "single-family detached dwelling."

12

Simply put, "building" can't mean one thing under the Code and something else under the Ordinance. As the Building Code Council implicitly found, a three-wing structure with three foundations (no matter its size) is one building under the Code's definition. So a three-wing structure with three foundations must likewise be one building under the Ordinance's definition. Otherwise, the Code and the Ordinance will define "building" inconsistently, in violation of the amendment.

The County and the Longs (collectively "Appellants") argue that the Council decision isn't relevant because it didn't focus on whether the Chesapeake was "a building." Appellants' Br. at 32. Instead, the decision determined that the Chesapeake was a "one family dwelling." But under the Code, a "one family dwelling" consists of "*any* building." N.C. Residential Code §§ R101.2, R202. As the district court explained, both the County and State's definitions of dwelling "apply to 'a' or 'any building'; in other words, a single and not multiple buildings." *LeTendre*, 2020 WL 6750429, at *5.

Thus, "when the Building Code Council determined that the [Chesapeake] was a one family dwelling, it [necessarily] determined that the project consists of a or any building." *Id.*

Appellants also contend that the amendment applies only to a "rule" or a "statute" adopted by the state agency, including the State Building Code Council. Appellants' Br. at 40–41. Since the Council's decision isn't a "rule . . . adopted in accordance with the procedural requirements of the [Administrative Procedure Act]," say the Appellants, its interpretation of the Building Code can't abrogate the Ordinance. *Id.* (citing N.C. Gen. Stat. § 143-138(a)).

13

But this argument is too exacting.  The Council decision *interprets* a valid rule: the Residential Building Code.  N.C. Gen. Stat. § 143-138(a).  As the former chair of the Building Code Council (and the chair in 2015, when the Council issued the decision) explained, since no party appealed the Council order, "it stands as a final determination that LeTendre's home constitutes a 'one family dwelling' as that term is defined under the Building Code."  J.A. 437.  And under the Code's definition, a "one family dwelling" consists of only one building.  N.C. Residential Code §§ R101.2, R202.

Appellants next argue that LeTendre's reading of the amendment conflicts with another subsection of the law, N.C. Gen. Stat. § 160D-706(a):

> [W]hen regulations made under authority of this Article require a greater width or size of yards or courts . . . or impose other higher standards than are required in any other statute or local ordinance or regulation, the regulations made under authority of this Article govern. . . . [W]hen the provisions of any other statute or local ordinance or regulation require a greater width or size of yards or court . . . or impose other higher standards than are required by regulations made under authority of this Article, the provisions of that statute or local ordinance or regulation govern.

Under this subsection, if there's a conflict between a state code and a local ordinance, then the regulation that imposes "higher standards" applies.  Appellants urge that because the Ordinance imposes a "higher standard" for its definition of single-family dwelling, that standard should apply.

That's not how North Carolina courts interpret statutes.  When faced with a conflict between a specific statute and a general one, "the specific provision must be taken as intended to constitute an exception to the general provision, because the legislature is not

14

to be presumed to have intended a conflict." *In re Belk*, 420 S.E.2d 682, 686 (N.C. Ct. App. 1992).

Here, subsection (b) of the statute—codifying the 2019 amendment—specifically applies to "buildings" and "dwellings," and it serves as an exception to subsection (a). N.C. Gen. Stat. § 160D-706(b). Since subsection (a) generally applies to all zoning regulations, and subsection (b) is specific to "buildings" and "dwellings," subsection (b) applies here.

Appellants claim that this rule of statutory interpretation applies when there are two conflicting statutes, not two conflicting subsections within the same statute. But the Supreme Court of North Carolina has rejected that argument. *See LexisNexis Risk Data Mgmt. Inc. v. N.C. Admin. Off. of Cts.*, 775 S.E.2d 651, 656 (N.C. 2015) ("Just as a more specific statute will prevail over a general one, a specific provision of a statute ordinarily will prevail over a more general provision in that same statute." (cleaned up)); *see also N.L.R.B. v. SW Gen., Inc.*, 580 U.S. 288, 304 (2017) (explaining that general provision wouldn't impact application of specific provision within the same statute). And Appellants haven't offered any other authority to suggest that this interpretive principle applies exclusively to conflicting statutes.

Appellants complain that LeTendre seeks to have a federal court overturn *Long* and *Letendre*, which would violate "principles of *res judicata* and the *Rooker-Feldman* doctrine." Appellants' Br. at 28. But neither res judicata, which bars parties from relitigating issues decided in a final judgment on the merits of an action, nor the *Rooker-Feldman* doctrine, which bars district courts from reviewing final judgments of state courts, has any relevance here. *See Pueschel v. United States*, 369 F.3d 345, 354 (4th Cir. 2004)

15

(explaining res judicata); *Reed v. Goetz*, 598 U.S. 230, 235 (2023) (explaining the *Rooker-Feldman* doctrine); *see generally Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

Applying the Ordinance, *Long* found that the Chesapeake consisted of "multiple buildings." *Long*, 787 S.E.2d at 836–37. And *Letendre* subsequently rejected LeTendre's state law arguments, holding that "the determination by the North Carolina Building Code Council does not in any way control" the County's application of the Ordinance. 817 S.E.2d at 99.

But the later zoning amendment abrogates that aspect of *Letendre* because it *does* make the Council decision controlling. Appellants haven't challenged the amendment's retroactive application, so it applies to the Ordinance. *See* 2019 N.C. Sess. Laws 111 § 3.1 (stating that the amendment will "clarify and restate the intent of existing law and apply to ordinances adopted before, on, and after the effective date"); J.A. 377 (statement of the County that the amendment applies to "ordinances adopted before, or, and after" the amendment's enactment).

Under principles of res judicata and the *Rooker-Feldman* doctrine, we have no power to review whether *Long* and *Letendre* correctly interpreted the Ordinance. We decide only that—because of the zoning amendment—the Council decision trumps *Long*'s and *Letendre*'s determinations that the Chesapeake consists of multiple buildings.

In sum, we agree with the district court that the Building Code Council's determination that the Chesapeake is "a building" controls.

16

III.

We've one loose end to tie up.

Appellants challenge the district court's ruling on the Longs' motion to intervene. Though the district court granted the motion, it took five months to rule, and did so in connection with LeTendre's motion for summary judgment. Appellants argue that the delay prevented the Longs "from actually being heard on this matter." Appellants' Br. at 45–46. We reject this contention.

Appellants say that had the Longs been allowed to timely intervene, they would have introduced additional communications between Department of Insurance staff and LeTendre about the Chesapeake's classification. But the Building Code Council conclusively determined that the Chesapeake is "a building" under the Residential Building Code. As the district court determined, the Longs' "new evidence" about the Chesapeake's classification can't change that result.

* * *

For these reasons, the district court's judgment is

*AFFIRMED.*

17